# Hughes *versus* The Westmoreland Coal Company.

1. A conveyance of coal provided, inter alia, as follows; "And the said party of the second part does agree to pay as follows: For each acre of good merchantable coal contained in that portion of the land which lies along the west side of the ravine on the east side of the Sowash property, the sum of $140 per acre, and for the merchantable coal upon the remainder, the sum of $70 per acre." The evidence showed that east of the Sowash property beginning at the northern part and running south, there was only one ravine, but that this ravine separated into two, about opposite the middle of the Sowash property—No. 1 running southeast and No. 2 running south-west.

*Held*, that the deed presented no latent ambiguity, and that the construction thereof was for the court; which rightly decided, that ravine No. 2, being the one nearest the Sowash property and in such a position that it must be crossed by a line running east from said property to ravine No. 1, was the one intended in the conveyance.

2. Cross-examination must be confined to matters which have been stated in the examination in chief, and to such questions as may tend to show bias and interest in the witness; to permit a party to lead out new matter, constituting his own case, under the guise of cross-examination, is disorderly and often unfair to the opposite party.

3. Where the defendant is improperly allowed to cross-examine the plaintiff's witness, and educe matter of defence, the jury should consider the testimony so drawn out as if the witness had been called and examined in chief, on the part of the defendant. Under such circumstances it is error for the court to order a non-suit on the ground that the plaintiff's own witness has testified to matters constituting a good defence.

October 5th 1883. Before Mercur, C. J., Gordon, Trunkey, Sterrett and Green, JJ. Paxson and Clark, JJ., absent.

Error to the Court of Common Pleas of *Westmoreland county :* Of October and November Term 1883, No. 51.

Debt, by Martha M. Hughes against The Westmoreland Coal Company, to recover a balance of unpaid purchase money for coal in Westmoreland county.

On the trial, before Hunter, P. J., the following facts appeared : The plaintiff had a life estate in certain coal under the will of her first husband. In 1853 she was married a second time, to Rev. Watson Hughes who joined with her in a conveyance of this coal to William Larimer, Jr. The deed, dated August 31st 1853, was signed by Hughes and his wife as parties of the first part, and by William Larimer, Jr., party of the second part, and contained, inter alia, the following provisions :

"For each acre of good merchantable coal contained in that portion of the land which lies along the west side of the ravine on the east side of the Sowash property, the sum of $140 per acre, and for the merchantable coal upon the remainder, the sum of $70 per acre, payable semi-annually, as fast as the coal is mined. The payments shall commence from and after the first day of January next, and shall not average less than $500 per annum. And if the coal mined should not be sufficient to pay this amount, the balance shall be advanced by the party of the second part. These payments of $500 per annum shall continue until the whole of that portion for which $140 per acre is to be paid, shall have been mined, and this portion shall be the first taken out, after which the payments shall be in the same proportion as the price per acre of the coal, it being understood that if more coal should be mined than will pay the $500 per annum, at the prices named, the full amount shall be paid to the parties of the first part."

The defendants became grantees of William Larimer, Jr., on December 22d 1854, and succeeded to his rights and obligations under the original deed. Rev. Watson Hughes died in March 1870 and William Larimer, Jr. died in May 1875, six years before this suit was brought by Mrs. Hughes.

The plaintiff alleged that since July 1st 1878 the defendants had paid her but $250 per annum, and therefore claimed to recover an additional $250 per annum during the interval; also to recover money due and unpaid by reason of the defendant having mined more coal per annum, for several years, than would pay either the $250 or the $500 per annum, as provided in the article, with interest thereon from the time that the same should have been paid ; and also to recover an

[Hughes *v.* Westmoreland Coal Co.]

unpaid balance of $70 per acre on about 41.55 acres of coal mined by defendant, and for which but $70 per acre had been paid, whereas $140 per acre should have been paid.

The evidence showed that on the east (or more accurately on the south-east) of the Sowash property, commencing at the northern part, there was but one ravine, which ran approximately north and south, but that after running south about opposite the middle of said Sowash property, this ravine separated into two, No. 1 running south-east and No. 2 south-west. Therefore, opposite the southern half of the Sowash property, in a general easterly direction, there were two ravines.

The plaintiff contended that No. 1, the ravine furthest from the Sowash property, was the one intended in the conveyance of 1853, and that defendants ought therefore to pay $140 per acre for the coal between that ravine and the Sowash property.

The defendants, on the other hand claimed that No. 2 was intended, and that they were bound to pay only $70 per acre for the coal between the two ravines.

In order to show the amount of coal actually mined by the defendants, the plaintiff called one F. Z. Schellenberg, superintendent of the defendant company; and on the direct examination the witness was asked only as to this fact. But on the cross-examination the defendants asked the witness: First. "Where is ravine No. 2 that you claim is the division line between these two values of coal; state where it is located and whether it is a well-marked ravine on the ground?" Objected to by plaintiff. Objection overruled and evidence admitted. Exception. (First assignment of error.) Second. "You have stated the amount of coal you took out; state whether or not it had been paid for up to May 17th 1881?"

Answer. "The amount of coal that had been taken out from 1874 up to May 17th 1881, from my own knowledge I can say was paid for." Objection by plaintiff. Objection overruled and evidence admitted. Exception. (Second assignment of error.)

Plaintiff then called one Mrs. Logan, who had attended to plaintiff's business since 1870, and she testified that from 1874 to July 1878 defendant had paid plaintiff but $500 per annum. And that since July 1878, up to the date of suit brought, defendant had paid plaintiff but $250 per annum leaving a balance, as was claimed, of over $1,800 due and unpaid to plaintiff for coal mined by defendant up to the date of suit brought.

On motion of the defendants, the court granted a compulsory non-suit for the following reasons:

8 Outerbridge.—14

[Hughes *v.* Westmoreland Coal Co.]

" 1st. Because plaintiff, having proved that her action is founded upon an indebtedness arising from the mining, by defendant, of the coal of plaintiff, has also proved that no right of action exists in her, her own witness, Mr. Schellenberg, having testified that all the coal so mined has been paid for in full, and that he had receipts for the same.

" 2d. The evidence on the part of plaintiff clearly exhibits that there is on the ground a well-marked ravine, east of the Sowash property, which, with the Sowash line, bounds and cuts off a part of this coal, which has been paid for at $140 per acre. This being the fact, it now becomes the duty of the court to place a construction upon the agreement, and to declare as matter of law, that it is not any longer ambiguous; that this ravine No. 2 is the one intended by the parties in the agreement, and that plaintiff has therefore no cause of action."

A motion by the plaintiff to take off the non-suit was refused by the court, HUNTER, P. J., delivering the opinion which was, inter alia, as follows :

" After a patient investigation we are satisfied that we committed no error in entering non-suit. From the plaintiff's own showing, there was no disputed question of fact, the defendants admitting all that plaintiff had shown, and the case therefore turned wholly on the construction of the contract. There was no dispute as to the fact that there were two well-defined ravines, and to the mind of the court, No. 2 filled the description in the agreement. The plaintiff herself showed that the coal up to this ravine had been paid for at the rate of $140 per acre. There was no evidence, aliunde, as to what ravine was intended by the parties, except that of the comparative value of the coal, but that could not control well-defined natural marks on the land. The defendants, as we have said, admitted all the plaintiff proved, what then was there for the jury? Was it not purely a question of the construction of the written contract? The " ravine, etc."—what was meant by this, under the plaintiff's own showing? Was not this for the court under the facts—the undisputed facts ?"

Thereupon the plaintiff took this writ, assigning for error the admission of Schellenberg's testimony on cross-examination as above noted; and the action of the court in granting a compulsory non-suit, and refusing to take off the same.

*Lucien W. Doty* and *Winfield S. Wilson* (with whom was *James C. Doty*), for plaintiff in error.—The rule is well settled that the cross-examination should be confined to matters in regard to which the witness has been examined in chief, and to such questions as may tend to show the bias and interest of

[Hughes v. Westmoreland Coal Co.]

the witness. To permit the defendant, under the guise of a cross-examination, to give evidence in chief, is not only disorderly, but unfair to the plaintiff: Hopkinson v. Leeds, 28 Sm. 396; Fulton et al. v. Central Bank of Pittsburgh, 11 N. 112; Floyd v. Bovard, 6 W. & S. 75. Where an instrument, sealed or unsealed, is unambiguous in its terms, but it is made doubtful by parol evidence, what was the subject about which the parties contracted, it is exclusively the province of the jury to determine, as a question of fact, the identity and locality of the subject: Watson v. Blaine, 12 S. & R. 131, 136; Lycoming Mutual Insurance Co. v. Sailer, 17 Sm. 108; Richardson v. Stewart, 2 S. & R. 84; Bertsch v. Lehigh Coal, &c. Co., 4 Rawle 130; Nourse v. Lloyd, 1 Barr 229; Watson v. Blaine, 12 S. & R. 131. An ambiguity on the face of a document is for the judge to explain; but if it arise from extrinsic evidence, it must be solved by the jury: Brownfield v. Brownfield, 2 Jones 136; Beatty v. Lycoming Ins. Co., 2 P. F. S. 456; Lycoming Mutual Ins. Co. v. Sailer, 17 P. F. S. 108. It follows, therefore, in view of the evidence, that it was a question of fact for the jury to determine which one of the ravines was intended to mark the division line between the two kinds of coal. It was for the court to decide the meaning of the instrument, if there had been any doubt as to its meaning; but on the authority of Beatty v. Lycoming County Insurance Co., 2 Sm. 456, the application of the meaning to the subject about which the parties contracted was a question of fact for the jury.

*H. P. Laird* and *Moorhead* (with whom were *Head* and *J. A. Marchand*), for defendants in error.—The first two assignments of error cannot be sustained, because the questions asked were distinctly as to the res gestæ of the direct examination, and therefore permissible: Markley v. Swartzlander, 8 W. & S. 172; Covanhovan v. Hart, 21 Pa. St. 495. Where a witness has stated a fact, he may be asked by the other party to detail all circumstances within his knowledge which qualify it, even though they may constitute new matter and form part of his own case: Jackson v. Litch, 12 P. F. S. 455; see also Bank v. Fordyce, 9 Barr 277. If a latent ambiguity is pretended or set up, and the extrinsic evidence shows that none exists, then the question is for the court: Harvey v. Vandegrift, 8 Norris 346; Brown v. Willey, 6 Wr. 205.

Mr. Justice TRUNKEY delivered the opinion of the court, November 12th 1883.

Although the objection to the question set forth in the first specification of error might well have been sustained, its allowance was harmless. The location of the ravine therein referred

to was not in dispute, and it was proved and uncontroverted that there was a ravine on a part of the Fullerton tract, formed by the confluence of two smaller ones, each well-marked upon the ground. Which of these two ravines was intended by the parties to the contract, is the most important inquiry in this action. It arises under the following clause : " For each acre of good merchantable coal contained in that portion of the land which lies along the west side of the ravine on the east side of the Sowash property, the sum of $140 per acre, and for the merchantable coal upon the remainder, the sum of $70 per acre."

There is no patent ambiguity; if there were but one ravine the meaning would be unmistakable. Because there are two, in absence of any evidence of the intention, except as appears in the writing, the plaintiff contends there is a latent ambiguity and that the jury must determine which is the line. It is settled that where there is a latent ambiguity in an instrument which requires the aid of extrinsic evidence to ascertain the subject of the contract, or where a contract is partly in writing and partly in parol, or where a contract cannot be understood without reference to facts dehors the writing, the question is for the jury. If a written contract relates to a house or a tract of land, and it be proved by parol evidence that there are two houses, or two tracts, alike within the description, the fact must be determined by the jury. But when the location of the land described in the deed is certain, it needs not a jury to distinguish it from another tract. If it be admitted that the boundaries of a tract of land actually exist on the ground, as named in the deed, a jury shall not interpret the deed, or determine that the land is in another place.

The plaintiff shows that there are two ravines : if there were but one, it is not pretended that there would be a fact to determine by jury trial. It is none the less certain that the body of coal in controversy was bounded on the west by the Sowash property and on the east by a ravine, because there are two ravines, than it would be were there but one. And the construction of the deed is exclusively for the court. Were the fact of two ravines in dispute it would be submitted to the jury to determine, with instructions by the court, as to the meaning of the deed.

Above the confluence the first ravine from the Sowash line is south east from the Sowash property; but a direct line from any part of the Sowash tract to any point on the second ravine, will cross the first. We are of opinion that a stipulation respecting the coal between the Sowash tract and the ravine means the ravine nearest the tract; not that one or more shall be crossed to reach a ravine no better defined than the first. When a grantor contracts for a larger consideration per acre for

[Hughes v. Westmoreland Coal Co.]

a portion of the grant between specified marks, if there be doubt as to which of two similar marks he intended, the doubt must be solved in favor of the grantee.    But it seems unnecessary to apply rules for resolving doubts to the language of this instrument, for it is reasonable to infer that the parties intended the proximate ravine to the Sowash line instead of the remote. The learned judge of the Common Pleas rightly assumed the construing of the deed and gave the proper construction.

We think the court erred in not submitting the testimony relating to payment to the jury.    It has been reiterated in this state that cross-examination must be confined to matters which have been stated in the examination in chief, and to such questions as may tend to show bias and interest in the witness; that to permit a party to lead out new matter, constituting his own case, under the guise of a cross-examination, is disorderly and often unfair to the opposite party; and that these rules are established for the purpose of eliciting truth and preserving equality of the rights of parties in trials of causes.    The purpose might often be defeated by a rigid enforcement of the rules in all cases.    In the order of examination of witnesses and the introduction of testimony, much must be left to the discretion of the court below.    This court has rarely, if ever, reversed for an error in permitting a violation of the rules relating to cross-examination which did not result to the prejudice of a party.    Where the defendant is improperly allowed to cross-examine the plaintiff's witness and educe matter of defence, the jury should consider the testimony so drawn out as if the witness had been called and examined in chief on the part of the defendant.    Under such circumstances it is error for the court to order a non-suit on the ground that the plaintiff's own witness had testified to matter constituting a good defence: Jackson v. Litch, 62 Pa. St. 451; Hopkinson v. Leeds, 78 Id. 396; Fulton v. Central Bank of Pittsburgh, 92 Id. 112.

The plaintiff called Mr. Schellenberg, superintendent of the defendant's mining operations, for the purpose of proving how many acres of coal had been mined, when mined, and from what portions of the tract.    Upon cross-examination, the plaintiff objecting, the witness was allowed to say that within his own knowledge all the coal taken out had been paid for.    The contract showed the price per acre, the witness proved the number of acres, and on what parts of the tract; this was the plaintiff's case, the jury could find the amount; but whatever the sum, the defendant had been allowed to inject an assertion that the whole had been paid, without calling a witness.    The injected matter was pertinent defence impertinently introduced. True, in answer to a direct question in chief, the witness asked

the privilege of explaining, whereupon he stated the quantity to a certain date, adding, "I paid for more than that;" but the addenda was a reason for more strictly enforcing the rules in his cross-examination. He had not been examined in chief as to payment. The plaintiff's case was not like a sale of goods for cash, a single transaction, where a witness who proves sale and delivery may be cross-examined as to the payment at the time, that being of the res gestæ. So, a subscribing witness who testifies to the execution of a written contract, may be cross-examined as to what passed between the parties at the time of its execution ; but not respecting matters which occurred between them at a subsequent date.

Had an orderly examination of the witness been enforced no question of non-suit would have arisen. Then, the jury would have considered the testimony of Mrs. Logan upon the question of payment, as well as that of Mr. Schellenberg. But even if allowance of the objectionable cross-examination is not taken as ground for reversal, the testimony ought to have been submitted.

Judgment reversed and procedendo awarded.