# Smith, Appellant, v. Standard Steel Car Co.

*Negligence—Master and servant—Judgment—Rule as to judgment n. o. v.—Evidence.*

1. In an action by a widow against the employer of her husband to recover damages for the latter's death, it is reversible error to enter judgment for defendant n. o. v. where the evidence shows that the deceased was killed while operating a crane; that some days before the accident he had complained of its dangerous condition, receiving the promise of his employer that it would be repaired; that on the very morning of the accident he had been informed that repairs had been made in his absence the day before; that

its dangerous condition on the day of the accident was not so plain that it could be held, as a matter of law, that no ordinarily prudent man would undertake its operation; and that at the time of the accident the deceased acted in a sudden emergency to save the lives of others.

2. In determining the propriety of a judgment n. o. v. the controlling question is, would binding instructions for defendant have been proper at the end of the trial; and, in deciding that point, the evidence must be read in the light most favorable to the plaintiff, the latter being given the benefit of every fact and inference of fact pertinent to the issue involved which may legitimately be drawn from the evidence.

3. Where the issue of contributory negligence has been submitted to the jury, a finding in favor of the plaintiff will not be set aside, unless, upon a review of the evidence in the light most favorable to the plaintiff, it is inconceivable that a mind desiring only a just and proper determination of the question could reasonably reach any other conclusion than that the plaintiff had brought about or contributed to the injury by his own carelessness.

4. In entering judgment n. o. v. for defendant in a negligence case, the court commits error in basing its action upon certain conclusions of fact, as to the cause of the accident, stated by some of the plaintiff's witnesses, who had not seen the accident, whereas another witness was produced by the plaintiff, who actually stood at the side of the deceased and saw all he did immediately before and at the time of the accident.

5. In such a case it is also error to accept as a verity a conclusion of fact stated by one of plaintiff's witnesses on an issue which was for the jury to decide.

*Evidence—Cross-examination—Defense introduced on cross-examination—Nonsuit.*

6. Where the defendant is improperly allowed to cross-examine a witness for plaintiff and shows matters constituting a defense to the action, the jury shall consider the testimony as if the witness had been called and examined in chief by defendant, and evidence so elicited cannot be made the basis of a nonsuit.

Argued Oct. 9, 1918. Appeal, No. 180, Oct. T., 1918, by plaintiff, from order of C. P. Lawrence Co., Dec. T., 1912, No. 23, entering judgment for defendant n. o. v. in case of Elwilda Smith v. Standard Steel Car Company. Before STEWART, MOSCHZISKER, FRAZER, SIMPSON and FOX, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before EMERY, P. J.

At the trial the jury returned a verdict for plaintiff for $8,337.50. On motion of defendant the court entered judgment for defendant n. o. v.

*Error assigned* was the order of the court.

*C. W. Fenton*, for appellant.—Cited on the question of defendant's negligence: Finnerty v. Burnham, 205 Pa. 305; McKee v. Crucible Steel Co., 213 Pa. 333; Ready v. Smith & Furbush Machine Co., 51 Pa. Superior Ct. 294; Lewis v. Seifert, 116 Pa. 628.

Cited as to the assumption of risk: Glass v. College Hill Borough, 233 Pa. 457; Reese v. Clark, 198 Pa. 312; Schall v. Cole, 107 Pa. 1.

*J. Norman Martin*, with him *Norman A. Martin*, for appellee.—The question involved in this case is in all respects the question ruled by the Supreme Court in Flaherty v. McClintic-Marshall Construction Company, 243 Pa. 580. See also Talbot v. Sims, 213 Pa. 1; Brownfield v. Hughes, 128 Pa. 194; Zuraw v. Hammermill Paper Co., 232 Pa. 544; Derr v. Lehigh Valley R. R. Co., 158 Pa. 365; Hart v. Allegheny County Light Co., 201 Pa. 234; Nuss v. Rafsnyder, 178 Pa. 397; Nye v. Penna. R. R. Co., 178 Pa. 134.

OPINION BY MR. JUSTICE MOSCHZISKER, January 4, 1919:

Elwilda Smith sued in trespass to recover damages for the death of her husband, which she alleged was due to the negligence of defendant company, by whom he was employed; the verdict favored plaintiff, but the court below entered judgment for defendant non obstante veredicto; hence this appeal.

In determining the propriety of a judgment n. o. v., the controlling question is, would binding instructions for

defendant have been proper at the end of the trial; and, in deciding that point, the evidence must be read in the light most favorable to plaintiff, the latter being given the benefit of every fact and inference of fact pertinent to the issues involved which might legitimately be drawn from the evidence. When the rule just stated is applied to the present case, and all conflicts in the evidence resolved in favor of plaintiff, the following facts appear, and justifiably could have been found by the jury: Plaintiff's husband was employed as a pipe fitter and machinist by defendant company; about November 1, 1911, he was put in charge of a locomotive crane; the lever which was used to hoist or lower the load carried by this crane worked in a quadrant, or two pieces of steel forming a quarter of a circle, the lever being between them, and having a latch attached to it, so that when the latter was moved the former would drop into notches cut into the quadrant and, when everything was in proper condition, hold the lever in the position desired by the operator of the crane; several days prior to the accident, Smith made complaint to defendant's foreman that "the lever to lift the load up wasn't safe," and the latter replied, "we will put her in the shop on Sunday and make repairs"; on Monday morning, when Smith reported for work, the foreman said, "the crane was in good shape," that "it was all right in repair"; prior to Monday the crane had been undergoing repair several days, and Smith had worked thereon, but he had nothing to do with repairing the quadrant, nor had he been at the shop on the Sunday prior to the accident; on Monday, the day of the accident, after the deceased had been operating the crane about two hours (from some unexplained cause and in a manner not made clear by the evidence), the "brake gave way," but the operator successfully "held it right there"; about three hours after this happened, Smith, having a heavy load to deposit from the crane, was operating it upon an elevated track; "when he got to the place where he should land the load, he set the crane,

standing still, the boom was swung around, and he waited for them, two or three men, to bring the blocks over [referring to some fellow-employees who were working on the surface below the track upon which the crane was being operated], and them fellows were fixing the blocks on the ground to land the load down over"; at this point, with the men fixing the blocks beneath, the load commenced to slip, and Smith, seeing it was "getting away" from him, apparently in "fear he might kill them fellows," in the emergency "caught hold of the lever, shoved it back quick, and stopped the load all at once;" "when he stopped the load it upset the crane"; in the fall which ensued, Smith was killed, but a fellow employee who was in the crane cabin with him escaped death.

In addition, it affirmatively appears that, after the early slip, which occurred at about nine o'clock, there was no further trouble of that kind till the accident happened; also that, just prior to the accident, the crane was stopped by Smith, who was operating it, at the point designated by the three men who, subsequently, were engaged in fixing the blocks to receive the load when the casualty occurred; there is nothing upon the record, however, to show that these men were actually under the load when it was first swung out. We may say the matters of fact above referred to in quotation marks are taken from the testimony of the man who was working by Smith's side, in the cabin, when the latter was killed; this man was the only eye-witness of the accident produced by plaintiff.

On the facts as we have stated them, and as they could have been found by the jury, it is not apparent that, when Smith took the crane out, its dangerous condition was so plain it could be held, as a matter of law, that no ordinarily prudent man would undertake its operation. In fact, counsel for appellee say in their paper book, Smith "knew that with careful handling the quadrant would hold." When we consider deceased had, days before the accident, complained of the dangerous condition of the

quadrant, receiving the promise of his employers that it would be repaired, and he was informed, on the very morning of the accident, the repairs had been made in his absence the day before, it becomes clear the court erred in holding, as a matter of law, that plaintiff's recovery was barred because of the assumption of risk by her husband.

Again, when we consider the rule that, "where the issue of contributory negligence has been submitted to the jury, a finding in favor of the plaintiff will not be set aside, unless, upon a review of the evidence in the light most favorable to the plaintiff, it is inconceivable that a mind, desiring only a just and proper determination of the question, could reasonably reach any other conclusion than that the plaintiff had brought about or contributed to the injury by his own carelessness—that is, after determining all doubts and drawing all inferences in favor of the plaintiff, it must be clear that he was guilty of contributory negligence before it can be so ruled as a matter of law" (Cramer v. Aluminum Co., 239 Pa. 120, 125), it becomes manifest the court below erred in holding the deceased guilty of contributory negligence. In this connection, it must be remembered there was ample evidence to show the defendant had failed in its duty to furnish reasonably safe implements for plaintiff's husband to work with, and that, after due complaint of the defective condition of the crane, defendant had failed to properly repair the same; also that, at the time of the accident, the deceased acted in a sudden emergency to save the lives of others, and that, under such circumstances, one is "not charged with the consequences of errors of judgment resulting from the excitement and confusion of the moment": Corbin v. Philadelphia, 195 Pa. 461, 472.

The learned court below fell into error by not taking a view of the evidence most favorable to plaintiff, and, largely, by basing its judgment upon certain conclusions of fact, as to the cause of the accident, which appear in

the testimony of some of the plaintiff's witnesses. These conclusions are worthless as evidence, because the persons in question frankly stated, on cross-examination, they had not seen the accident, whereas another witness was produced by plaintiff, who actually stood at the side of the deceased and saw all he did immediately before and at the time of the occurrence which led to his death.

So, also, the court below erred in accepting as verity the conclusions of fact stated by one of plaintiff's witnesses, to the effect that Smith must have known the quadrant was not repaired when he undertook to operate the crane on the day of the accident; that was an issue for the jury to decide, from the testimony produced, and for neither the court nor the jury to determine upon conclusions stated by witnesses.

Finally, the most material error of the court below was in basing its decision upon the testimony of defendant's foreman, who was called as a witness by plaintiff, and examined by her counsel upon one point only. Another of plaintiff's witnesses had, on cross-examination, testified that Smith worked, in repairing the crane, on the Sunday prior to the accident; this man was referring to matters which had occurred more than four years prior to the trial, and he frankly admitted he could not remember well what had happened at the time. The court permitted plaintiff to call defendant's foreman to contradict the last-mentioned witness, and, after testifying to his position as foreman, he simply stated that Smith did not, as a matter of fact, work on the Sunday in question. On cross-examination, against plaintiff's objection, defendant's counsel was permitted to examine the foreman as to whose duty it was to put the quadrant in order when out of repair, and elicited an affirmative answer, to a leading question, to the effect that it was the duty of plaintiff's husband to repair the quadrant, if it was out of order. This was improper cross-examination, and the answer in no way bound plaintiff. The general rule

applicable here is that, where the defendant is improperly allowed to cross-examine a witness for plaintiff, and shows matters constituting a defense to the action, the jury shall consider the testimony as if the witness had been called and examined in chief by defendant, and evidence so elicited cannot be made the basis of a nonsuit: Catanzaro v. Pa. R. R. Co., 230 Pa. 305, 310; see also discussion of this point by Mr. Justice TRUNKEY, in Hughes v. Westmoreland Coal Co., 104 Pa. 207, 213, and in Quigley v. Thompson, 211 Pa. 107, 109, and principles stated in Henry's Trial Evidence, Section 485, with cases there cited in note 63. Moreover, there was other testimony upon the subject amply sufficient to show that, while deceased worked on the repairs to the crane, he was at no time directed to do anything towards repairing the quadrant; and that, when repairs were to be made, those who worked thereon had to report to defendant's foreman and, at the time, receive orders from him as to their respective duties. If defendant desired to prove it was Smith's duty to keep the quadrant in repair, it should have shown affirmatively, as part of its defense, that orders to that effect had been given deceased, instead of merely asking its foreman for his conclusion of fact as to whose duty it was to make such repairs.

The assignments of error are sustained, the judgment is reversed, and the record is remitted to the court below with direction that judgment for plaintiff be entered upon the verdict.