582 A.2d 369

**David G. BOWSER and Judith A. Bowser, Husband and Wife, Appellants,**

**v.**

**LEE HOSPITAL and John L. Bennett, M.D., Appellees.**

Superior Court of Pennsylvania.

Argued June 7, 1990.

Filed Nov. 15, 1990.

James F. O'Malley, Johnstown, for appellants.

John L. McIntyre, Hollidaysburg, for Lee Hosp., appellee.

M. David Halpern, Altoona, for Bennett, appellee.

Before KELLY, HUDOCK and MONTGOMERY, JJ.

MONTGOMERY, Judge.

This medical malpractice action was instituted by the plaintiff-appellants, David G. Bowser and his wife Judith, against the defendant-appellees, Lee Hospital and John L. Bennett, M.D. Mr. Bowser claimed that the defendants failed to properly diagnose his injuries and/or treat him after an accident. Mrs. Bowser's claims were for loss of consortium. The case went to trial before a jury, but at the conclusion of the plaintiffs' case, the trial judge granted a

compulsory nonsuit against the plaintiffs. They filed post-trial motions, seeking to have the nonsuit removed. After the denial of such motions, the plaintiffs filed the instant appeal to our court. They assert that the trial court committed a number of errors in its handling of their case.

Prior to reviewing the issues presented on this appeal, it is appropriate to note that the entry of a nonsuit in our Commonwealth is governed by Pa.R.C.P. 230.1, 42 Pa.C. S.A., which provides:

> In a case involving only one defendant, at the close of plaintiff's case on liability and before any evidence on behalf of the defendant has been introduced, the court, on the oral motion of a party, may enter a nonsuit if the plaintiff has failed to establish a right to relief. If the motion is not granted, the trial shall proceed. If the motion is granted, the plaintiff may file a written motion for the removal of the nonsuit.

In the instant case, in which two defendants are involved, Pa.R.C.P. 2231(c) and (d), 42 Pa.C.S.A., are also relevant. They state:

> (c) The trial of an action in which parties have joined or have been joined under Rules 2228 and 2229 shall be conducted as if independent actions between such parties had been consolidated for trial.
>
> (d) Except as otherwise provided by these rules, the joinder of parties in any action shall not affect the procedural rights which each party would have if suing or sued separately, and the verdicts and judgments entered therein shall be joint, several or separate according to the nature of the right or liability therein determined.

We also find guidance in this situation in Pa.R.C.P. 2232(d), 42 Pa.C.S.A., which declares:

> (d) When a plaintiff joins two or more defendants and the evidence does not justify a recovery against all of them, the court shall enter a nonsuit or direct a verdict in favor of any defendant not shown to be liable either jointly, severally or separately, and the action shall continue and determine which of the remaining defendants

are jointly, severally or separately liable with the same effect as though the defendants found to be liable were the only ones joined. As in other cases the court may enter judgment notwithstanding the verdict in favor of or against any of such defendants.

Further, in resolving this appeal, we must recognize the well-established maxim that a compulsory nonsuit may be entered only when the plaintiff cannot recover under any view of the evidence, resolving every doubt against its entry, and drawing all inferences most favorably to the plaintiff. *Scott v. Purcell*, 490 Pa. 109, 415 A.2d 56 (1980). In the consideration of a nonsuit, all conflicts in the evidence are to be resolved in favor of the plaintiff. *A.J. Aberman, Inc. v. Funk Building Corporation*, 278 Pa.Super. 385, 420 A.2d 594 (1980).

The record shows that the genesis of this case was an automobile accident which occurred on November 8, 1983. In that accident, plaintiff David Bowser was injured while sitting in his parked vehicle when it was struck by a vehicle operated by one Craig Neff. Mr. Bowser was transported from the accident scene to the Emergency Department at defendant Lee Hospital, where he was examined by defendant Dr. Bennett. Among other injuries, the plaintiff had swelling in the orbit of the left eye at the bridge of his nose. Although other injury areas were x-rayed, no x-ray was taken of the plaintiff's skull. There was evidence that although Mr. and Mrs. Bowser requested that a skull x-ray be taken, Dr. Bennett did not order x-rays or a CAT scan of the victim's skull. After the emergency room examination, Mr. Bowser was discharged from the hospital by Dr. Bennett.

The swelling or lump in Mr. Bowser's eye orbit appeared to him to be growing. Thus, in late November, he sought advice from Dr. Nicholas Masciotra, an ear, nose, and throat specialist. Dr. Masciotra suspected a possible bony tumor and ordered an x-ray of the area. The x-ray confirmed the presence of an osteoma or bony tumor in the frontal sinus cavity. Dr. Masciotra indicated that there was

no evidence of a lump in the area when he had examined Mr. Bowser in April, 1983. He expressed the opinion, on cross-examination, that the development of the osteoma probably preexisted the motor vehicle accident.

Although the presence of the tumor was confirmed as of the November 21, 1983 x-ray, no immediate medical action was taken by Dr. Masciotra with regard to it. Mr. Bowser had surgery on his shoulder in December, 1983. Afterward, another x-ray was taken of the sinus area of the skull where the osteoma had been discovered by Dr. Masciotra. At that time, it was discovered that the osteoma had grown very rapidly, and surgery was promptly scheduled to remove it. The surgery was performed by Dr. Masciotra. The plaintiffs have contended that Mr. Bowser suffered permanent brain damage as a result of the osteoma and related problems. More detailed aspects of the evidence offered at trial will be referred to, as appropriate, in our discussion of specific issues raised on this appeal by the plaintiffs.

In paragraph 13 of their complaint, the plaintiffs asserted the following, to describe their theory of Mr. Bowser's right to a recovery:

> As a result of the failure of the defendants to properly care for and treat the plaintiff, he developed an osteoma of the frontal sinuses, which remained undiagnosed for a period of time, and resulted in his being required to have substantial surgery, and has caused permanent and disabling brain damage.

Further, they declared in the complaint that the defendants had been negligent in a number of specific regards, including the failure to x-ray Mr. Bowser's skull, or otherwise to detect problems in that area, as part of the emergency room diagnosis and treatment process.

As indicated at the outset of this opinion, the plaintiffs have raised a number of claims of error on the part of the trial court in its conduct of the trial. Prior to discussing such issues however, we deem it appropriate to focus on the broad rationale expressed by the trial court for its order

entering a nonsuit. The trial judge found that the plaintiffs had not offered any evidence whatsoever to establish a relationship between any act or omission by either defendant, and the subsequent medical problems which were experienced by Mr. Bowser.

More specifically, the trial court pointed out that the plaintiffs proceeded on the theory that the defendants' failure to have arranged for x-rays or a CAT scan of Mr. Bowser's skull during his emergency room visit either caused the osteoma or somehow contributed to its development, and to his resulting brain damage. The trial court found that the plaintiffs had failed to produce any evidence to establish a causal connection between the alleged neglectful failure to take x-rays or a CAT scan and the medical problems experienced by the plaintiff husband.

We have carefully reviewed the record evidence in a light most favorable to the plaintiffs, giving them the benefit of all possible inferences. Having done so, we find ourselves in agreement with the trial court's conclusion that a compulsory nonsuit was appropriate in this case. It is noteworthy that in their argument and in their brief to our court, the plaintiffs have not identified any specific testimony, exhibits, or other evidence which arguably established any relationship between the alleged malpractice of the defendants, and the harm experienced by Mr. Bowser.

The record shows that one of the plaintiffs' experts, Dr. Keddie, offered testimony that the exercise of reasonable medical care would have called for x-rays and/or a CAT scan of Mr. Bowser's skull during his emergency room visit. However, Dr. Keddie did not express any opinion suggesting that the lack of such testing at that time caused the osteoma or related problems, contributed to their development, or created any increased risk to Mr. Bowser with respect to these medical conditions. Dr. Keddie's testimony could only support a finding that the defendants' failure to x-ray or take a CAT scan of the skull was negligent, but not to establish any relationship between such alleged neglect

and the subsequent difficulties experienced by the plaintiff husband.

Dr. Masciotra also testified for the plaintiffs. Like Dr. Keddie, he offered no opinion to establish any link between any act or omission of the defendants and the osteoma, related problems, and/or brain damage suffered by Mr. Bowser. In addition, the plaintiffs called Dr. Acosta, a neurologist, and Mary Ann Murphy, Ph.D., to testify regarding the severity of Mr. Bowser's brain damage and other physical problems. Neither offered any testimony to support the plaintiffs' burden of establishing some relationship between the alleged medical malpractice and the harm suffered by the plaintiff husband.

In *Mitzelfelt v. Kamrin*, 379 Pa.Super. 121, 549 A.2d 935 (1988), the court stated the following regarding a plaintiff's burden of proof in a medical malpractice case:

The general rule in this Commonwealth is that in order to establish a cause of action for medical malpractice, the plaintiff must present expert testimony establishing variance from accepted medical practice and that this deviation from community standards caused the plaintiff's injuries. . . . The only exception to the general requirement that expert testimony must be produced is "where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even nonprofessional persons." . . . As in other negligence cases, the plaintiff in a medical malpractice case bears the burden of proving a causal nexus between the wrongful conduct and the injury as part of the *prima facie* case. The plaintiff's "burden of proof" on this issue encompasses two separate and distinct burdens. . . . The first burden, the burden of production, refers to the responsibility of the plaintiff to present evidence of sufficient quality and weight that reasonably intelligent men could believe in the existence of the causal link sought to be established. If the plaintiff fails to satisfy this initial burden, it becomes incumbent upon the trial judge to remove the

issue from consideration by the jury, since any decision reached by the jury based on consideration of this evidence would involve an inordinate amount of speculation and conjecture....If the plaintiff succeeds in presenting evidence of sufficient quality and weight so that the evidence is allowed to reach the jury, he or she must then satisfy the second burden, the burden of persuasion. The burden of persuasion involves convincing the jury that the preponderance of the evidence shows defendant's conduct to have been a substantial cause of the harm to the plaintiff. 379 Pa.Super. at 126–127, 549 A.2d at 938. (citations omitted)

Under these standards, it is evident that the trial court did not err in finding that the plaintiffs failed to present evidence to establish the crucial element of causation. Given this state of the record, we shall now examine each of the contentions raised by the plaintiffs.

▮ First, they maintain that the trial court erred in granting a compulsory nonsuit after allegedly permitting the defendants to introduce evidence during the course of cross-examination. As pointed out earlier, Pa.R.C.P. 230.1 provides that a nonsuit may be entered only before any evidence on behalf of the defendant has been introduced. It has long been the rule that a compulsory nonsuit may not be entered by the court when a defendant offers exhibits into evidence during the plaintiff's case. See *Highland Tank & Manufacturing Co. v. Duerr,* 423 Pa. 487, 225 A.2d 83 (1966), and cases cited therein. In *Atlantic Richfield Company v. Razumic,* 480 Pa. 366, 390 A.2d 736 (1978), our Supreme Court described this rule as one that is strictly enforced, and declared that even where the defendant exceeds proper bounds of cross-examination so as to elicit matters constituting a defense to the cause of action, the trial court is precluded from entering a nonsuit. However, in a case somewhat analogous to the instant one, our court held in *Storm v. Golden,* 371 Pa.Super. 368, 538 A.2d 61 (1988) that a violation of this general rule may not result in a reversal if it is evident that the admission of some

defense evidence prior to the declaration of a nonsuit was harmless error.

In their brief to our court, the plaintiffs asserted that the trial court permitted the defendants to ask Dr. Acosta about causation. In that regard, Dr. Acosta did not respond in any way favorable to the plaintiffs, inasmuch as he attributed the problems experienced by Mr. Bowser to the injuries received in the automobile accident. It is clear that the trial judge did not consider such negative evidence in finding that the plaintiffs had failed to produce any affirmative evidence of a relationship between the omission of the defendants to take x-rays or a CAT scan of Mr. Bowser's skull in the emergency room, and the osteoma and brain damage he suffered. Thus, even if we found that such questioning of Dr. Acosta by the defendants exceeded the reasonable bounds of cross-examination, we would not conclude that the information elicited had any demonstrable impact upon the failure by the plaintiffs to establish any link between the alleged omissions of the defendants and the physical problems experienced by Mr. Bowser. Accordingly, the admission of Dr. Acosta's opinion concerning causation, rendered in response to defense questions, had no bearing on the question of whether a compulsory nonsuit was appropriate, and any error which may have occurred would have to be considered harmless.

It also appears that during cross-examination of Mrs. Bowser, defense attorneys inquired about a prior suit filed by the plaintiffs against the operator of the motor vehicle which injured her husband. In addition, she was asked to identify a copy of the complaint which was filed in that case, and also to identify income tax records. None of the documents which were identified by the plaintiff wife during this process were offered into evidence as exhibits by the defendants. In fact, plaintiffs' counsel chose to introduce the tax documents as exhibits. Our review of the defendants' cross-examination of Mrs. Bowser leads us to conclude that it did not amount to the introduction of any evidence by the defendants, contrary to Pa.R.C.P. 230.1.

The questioning did not exceed the proper bounds of cross-examination, and the defendants did not offer any of the documents identified by the plaintiff wife as defense exhibits in the case. Thus, we cannot find that the trial court erred in ordering a compulsory nonsuit after the questioning of Mrs. Bowser by the defendants.

■ We next address the plaintiffs' claim that the trial court improperly precluded the plaintiffs from entering into evidence a deposition of the testimony of Dr. Castellon, who had formerly been employed as the chief emergency physician in the Lee Hospital Emergency Department. In late January, 1986, plaintiffs' counsel advised the court that Dr. Castellon had requested to be relieved from testifying in the case on behalf of the plaintiffs. The plaintiffs' counsel indicated he would obtain a substitute expert. Based upon that assurance, the plaintiff was granted a continuance in the proceedings. Further, the trial court entered an order providing that a substituted expert's report had to be produced by the plaintiffs and filed with the court at a later date. The plaintiffs complied with that ruling.

■ A trial judge is granted broad discretion in the determination of whether the testimony of a particular expert ought to be admitted in a case, and unless there is a clear abuse of that discretion, no basis for reversal will be established. *Klyman v. Southeastern Pennsylvania Transportation Authority*, 331 Pa.Super. 172, 480 A.2d 299 (1984). In the instant case, there had been a clear understanding between the parties and the court that Dr. Castellon's testimony would not be offered at the trial as an expert on behalf of the plaintiffs. His deposition had only been taken for purposes of discovery. Moreover, the plaintiffs do not suggest that any aspect of Dr. Castellon's deposition testimony would have established or helped to establish that there was any relationship between any alleged negligence on the part of the defendants and the osteoma, other problems, and brain damage which Mr. Bowser suffered. It is also evident that his testimony would have been of the same nature as that offered by the

plaintiffs through Dr. Keddie. In light of these circumstances, we conclude that the trial court did not commit reversible error in ruling that the plaintiffs could not introduce the deposition testimony of Dr. Castellon in support of their claims in the case.

 The plaintiffs next argue that the trial court improperly granted a nonsuit in a case involving multiple defendants, prior to the time that all other defendants had presented evidence. In support of this position, the plaintiffs cite cases involving situations in which it was held that it was improper for a nonsuit to be entered as to one or more defendants, while several other defendants had not yet presented their testimony on the question of who might be liable for any harm experienced by the plaintiff. However, it is certainly appropriate to enter a nonsuit as to *all* of the defendants in a multi-defendant case when there is no evidence in the plaintiff's case to establish a right of recovery against *any* of the defendants. As an example of such a situation, where our court held that it was proper to enter a nonsuit as to the only two defendants in the case, before either had presented any defense proof, see *Gallegor v. Felder*, 329 Pa.Super. 204, 478 A.2d 34 (1984). There is no arguable merit in this contention of error by the plaintiffs.

 Next, we address an argument by the plaintiffs that the trial court should not have denied them the right to introduce into evidence medical records from defendant Lee Hospital, which pertained to Mr. Bowser's treatment and condition. The records in question, according to the plaintiffs, established a substantial change in Mr. Bowser's condition during the rapid growth of the osteoma from the time of the accident until his subsequent surgery. The plaintiffs argue that such evidence would have been significant in establishing the increased risk of harm to plaintiff husband "... due to the failure to x-ray and the resulting delay in surgery."

As has been previously discussed, the plaintiffs presented no expert medical opinion that the failure by the hospital to x-ray the plaintiff's skull, or to order a CAT scan, during the emergency room visit, increased the risk of harm from the osteoma or related problems. The introduction of the hospital records in issue, without such expert medical opinion evidence, would not have furthered the plaintiffs' case on an increased risk of harm theory. Accordingly, even if it would be determined that the hospital records should have been admitted by the trial judge, his rejection of them did not prejudice the plaintiffs' case. In the absence of relevant medical opinion on the theory of increased risk of harm, the records had no clear relevance in the case, except to substantiate the testimony offered concerning the worsening of the plaintiffs' condition after the accident. In that respect, the records would merely have been cumulative to other evidence. Therefore, we reject the plaintiffs' contention that the trial court committed error in refusing to allow the introduction of the medical records in question into evidence.

Finally, the appellants argue that the trial judge improperly refused to apply the rule enunciated by the Supreme Court of Pennsylvania in the case of *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978). In that case, our Supreme Court adopted Section 323 of the Restatement (Second) of Torts, in holding that after a plaintiff in a medical malpractice case has demonstrated that a defendant's acts or omissions have increased the risk of harm to the plaintiff, such evidence furnishes a basis for the fact-finder to go further and find that such increased risk was in turn a substantial factor in bringing about the resulting harm. In effect, a demonstration that there was an increased risk of harm establishes the necessary proximate cause relationship to justify a fact-finder's verdict against the defendant medical provider.

While the rule enunciated in *Hamil v. Bashline, supra,* is still established law in our Commonwealth, we find no basis in the record before us to justify the plaintiffs' contention

that the trial court should have applied that theory of recovery instead of ordering a compulsory nonsuit. The plaintiffs' complaint did not allege that the actions of either defendant increased the risk of harm to the plaintiff husband. Moreover, even if the words of the complaint could be construed to assert a right of recovery under the principles enunciated in *Bashline*, the plaintiffs failed to introduce any medical testimony that any conduct or omission by either defendant increased the risk of harm to Mr. Bowser. In the absence of such evidence, there would have been no justification for the trial court to consider the case under the *Bashline* standard. Therefore, we dismiss the final claim of error by the plaintiffs.

The order of the lower court is hereby affirmed.