## Dittert v. PennDOT

C.P. of Delaware County, no. 93-9918.

*Joseph L. Messa Jr.* and *Melissa C. Bittner,* for plaintiffs.

*John P. Capuzzi, deputy attorney general,* for Commonwealth.

*M. Elizabeth Naughton-Beck,* for defendant.

BRADLEY, *J.,* January 29, 1998—Plaintiffs appeal from the order denying their motion for post-trial relief and affirming the granting of a nonsuit.

On September 12, 1992, plaintiffs, Robert and Carol Dittert, husband and wife, were riding a motorcycle eastbound on Baltimore Pike in Nether Providence Township. As they approached and entered the intersection of Baltimore Pike and Interstate 476, commonly known as the "Blue Route," they had a green traffic light. Defendant, William Midkiff, was traveling westbound on Baltimore Pike in the designated left-turn lane because he wanted to turn left onto the entrance ramp to the Blue Route southbound. This left turn is controlled by a traffic signal with a left-turn arrow allowing such a turn and a red ball prohibiting one. Whether Midkiff saw any traffic lights at all at this intersection (and the ramifications flowing therefrom) was the subject of dispute at trial. As Midkiff turned left, the Ditterts collided with the side of Midkiff's van, resulting in severe injuries to plaintiffs.

Plaintiffs commenced this action by way of complaint on July 21, 1993 against defendants, PennDOT, County of Delaware, Nether Providence Township and William Midkiff. Prior to trial, the county's motion for summary judgment was granted; Nether Providence Township was dismissed by stipulation and William Midkiff entered into a release with plaintiffs.

Trial commenced on June 26, 1997. Lorraine Murray, a passenger in the car behind the motorcycle, and Wil-

liam Midkiff were the only eyewitnesses. Plaintiffs had no memory of the events immediately preceding the accident. Defendant Midkiff, called as on cross-examination, testified repeatedly and unequivocally, that he saw no traffic signals whatsoever at this intersection, even though it was customary for him to look. (N.T. 6/26/97, pp. 99, 100-101.) The import of his testimony was that he saw neither the traffic signal controlling the left-turn lane nor the other two traffic signals controlling traffic proceeding west on Baltimore Pike. Indeed, he testified that he did not see the overpass preceding all the traffic signals at the intersection of the Blue Route and Baltimore Pike. (N.T. 6/26/97, p. 98.)

Officer Douglas Soule, a Nether Providence police officer, who arrived at the scene shortly after the collision, was presented by plaintiffs. He testified that he was not personally aware that the left-turn signal, *i.e.,* the red ball part of it, malfunctioned. (N.T. 6/26/97, p. 136.) He also testified that a fellow officer, Sergeant Elmore, investigated the accident and inspected the traffic light. (N.T. 6/26/97, p. 138.) Neither Officer Soule's police report nor Sergeant Elmore's diagram of the scene suggested a malfunctioning traffic signal. (N.T. 6/26/97, pp. 135-36.)

Plaintiffs presented two witnesses, Gary J. Cummings, the township manager of Nether Providence Township, and a professional engineer expert, Joseph A. Thompson. Thompson testified that based on the materials he viewed to form the basis for his expert opinion, the red ball in Midkiff's left-turn lane had burned out and consequently, Midkiff would only have viewed the two green balls allowing westbound traffic to proceed through the intersection. Thompson testified Midkiff would have processed this information as okay for him to turn left. He also testified that this was

a difficult interchange for a motorist because of the overpass immediately preceding it. In Thompson's expert opinion, the traffic signal in question was negligently designed due to PennDOT's failure to have a preventive maintenance program in place ensuring routine replacement of bulbs, and this failure was a substantial contributing factor to this accident.

On cross-examination, Thompson conceded that no documents, depositions, or accident reports indicate the light bulb behind the red ball prohibiting a left turn was burned out. (N.T. 6/27/97, pp. 69-71.) Thompson admits that underlying his expert opinion are the twin assumptions that Midkiff looked up and saw some traffic signals and that the bulb illuminating the red ball in the left-turn signal was burned out. (N.T. 6/27/97, pp. 74, 87.)

After Thompson's testimony, court was recessed early on Friday afternoon to accommodate plaintiffs.

On Monday, June 30, 1997, plaintiffs presented the testimony of two treating doctors and the chief of police of Nether Providence Township. After lunch, plaintiffs intended to call Sergeant Elmore, another officer from Nether Providence Township who was present at the scene and investigated the accident. Plaintiffs' counsel indicated that Sergeant Elmore was not available but *perhaps* could testify the next day.[1] Plaintiffs had no further testimony or evidence to present other than Elmore's uncertain testimony. PennDOT declined the invitation to go out of turn and moved for a nonsuit.

The motion for nonsuit was granted. Post-trial motions were filed by plaintiffs and denied. This appeal followed.

---

1. Recall that Elmore was the officer that indicated in the police report that the signals were functioning properly.

Although numerous issues were raised in plaintiffs' statement of matters complained of on appeal, these issues can be grouped into three categories which will be addressed below.

Plaintiffs allege error in the granting of a nonsuit pursuant to Pa.R.C.P. 230.1 at the close of their case. A nonsuit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action. It is the duty of the trial court to make this determination prior to the submission of the case to the jury. *Poleri v. Salkind,* 453 Pa. Super. 159, 683 A.2d 649 (1996), *alloc. denied,* 548 Pa. 672, 698 A.2d 595 (1997). Where it is clear a cause of action has not been established, a compulsory nonsuit is proper. *Wu v. Spence,* 413 Pa. Super. 352, 605 A.2d 395 (1992).

Initially, plaintiffs assert that they presented sufficient facts at trial for the jury to reasonably conclude that the preponderance of the evidence favors liability. However, an examination of the record reveals that the facts presented by the plaintiffs were so clear that reasonable persons could not differ that no liability could attach to defendant.

Plaintiffs' own witness, Midkiff, albeit called as on cross-examination, testified that he did not see any traffic signals whatsoever. This testimony of Midkiff's defeats the basis for the expert witness' opinion that because the red bulb behind the ball was out, Midkiff perceived the two illuminated green balls directing westbound traffic as allowing him to turn left. Plaintiffs are bound by Midkiff's harmful testimony since it was left unrebutted in their case in chief. Taking all the evidence and reasonable inferences therefrom, plaintiffs cannot escape the obstacle that the expert could not opine that Midkiff was confused or misled where there is no evi-

dence that Midkiff saw any lights. Moreover, the expert did not testify that the design and location of the traffic signals prevented Midkiff from seeing the traffic signals. With this scenario, how can PennDOT be held responsible?

Additionally, assuming plaintiffs had some evidence, direct or circumstantial, that Midkiff saw green lights which plaintiffs' expert interpreted as giving Midkiff the perception he was permitted to turn left, there is still no evidence the red ball forbidding such a turn malfunctioned on the day in question. Plaintiffs only produced testimony that the bulb was replaced two days after the accident. There is no evidence the bulb was not working on September 12, 1992. Although plaintiffs' counsel indicated that Officer Soule could testify that Midkiff gave a statement to him at the scene that he had a green light, Officer Soule was not questioned about such a statement when he testified nor was there any hint of such on the accident report.

Plaintiffs next raise a procedural issue concerning the legal propriety of granting a nonsuit. A motion for a compulsory nonsuit permits a defendant to test the adequacy of a plaintiff's evidence. To assure that the trial court bases its decision only on the evidence favorable to plaintiff, the court's authority to grant a nonsuit is strictly limited to where the defendant has offered no evidence. See *Atlantic Richfield Company v. Razumic,* 480 Pa. 366, 382, 390 A.2d 736, 744 (1978). This restriction has been interpreted as follows: "where the defendant offers evidence either during the plaintiff's case, . . . [or] where the defendant exceeds [the] proper bounds of cross-examination so as to elicit matters constituting a defense to [this] action, the trial court is without the authority to enter a nonsuit." *Id.* at 382-83, 390 A.2d at 744. (citations omitted) See *Highland Tank*

*& Manufacturing Co. v. Duerr,* 423 Pa. 487, 225 A.2d 83 (1966); *Smith v. Standard Steel Car Co.,* 262 Pa. 550, 106 A. 102 (1919); *Hughes v. Westmoreland Coal Co.,* 104 Pa. 207 (1883). This rule is to be strictly applied. *Storm v. Golden,* 371 Pa. Super. 368, 538 A.2d 61 (1988).

Plaintiffs contend that PennDOT exceeded the scope of the direct examination of plaintiffs' liability expert by eliciting testimony from him on matters which constituted defenses to plaintiffs' cause of action. Plaintiffs equate this with the defense offering evidence during plaintiffs' case, a fortiori, leaving the court without the authority to grant a nonsuit.

It is interesting to note that plaintiffs made no objection during the cross-examination of Thompson that PennDOT was exceeding the scope of the direct examination. PennDOT did not exceed the scope of the direct examination but was merely testing the basis of Thompson's expert opinion. Specifically, PennDOT's counsel cross-examined plaintiffs' expert using the Pennsylvania Motor Vehicle Code on the statutory duties imposed when a motorist is confronted with the confusing scenario the expert had just testified to on direct. This is not exceeding the scope of direct examination. Thompson was also cross-examined on a publication entitled *Traffic Signal Lanes* published by the Institute of Transportation Engineers. On direct examination, Thompson testified he was a member of this organization. Cross-examining him on publications in his field is not exceeding the scope of direct examination. He also was cross-examined on publications by the Federal Highway Administration. On direct examination, he relied on Federal Highway Administration standards to support his expert opinion. (N.T. 6/27/97, p. 55.) Cross-examining Thompson on Federal Highway Administra-

tion publications accordingly did not exceed the bounds of the direct examination. Plaintiffs have failed to demonstrate that any cross-examination of Thompson was beyond the scope of his direct testimony so as to constitute the introduction by PennDOT of evidence in defense of their claim. See *David v. Commonwealth,* 143 Pa. Commw. 161, 168, 598 A.2d 642, 646 (1991). Moreover, assuming PennDOT somehow exceeded the bounds of cross-examination, that would constitute harmless error as the basis for granting a nonsuit was unrelated to the alleged improper cross-examination of the expert. See *Bowser v. Lee Hospital,* 399 Pa. Super. 332, 582 A.2d 369 (1990), *alloc. denied,* 527 Pa. 614, 590 A.2d 755 (1991).

Plaintiffs allege that the court erred by refusing to allow testimony regarding prior accidents at the intersection. The testimony offered did not meet the standard for its admission. In *Stormer v. Alberts Construction Company,* 401 Pa. 461, 165 A.2d 87 (1960), the court stated:

"Under some circumstances, [such], for example, [as where] cause of the accident or the defective or dangerous condition is unknown or disputed, evidence of similar accidents occurring at substantially the same place and under the same or similar circumstances may, in the sound discretion of the trial judge, be admissible to prov[ide] constructive notice of a defective or dangerous condition and the likelihood of injury." *Id.* at 466, 165 A.2d at 89.

Plaintiffs had no evidence to suggest that any of these prior accidents were substantially similar to the Ditterts' accident. There were no copies of prior accident reports and no witnesses to elicit testimony regarding similarities between their accidents and the one in question. Their expert never addressed the issue of prior similar accidents.

Plaintiffs sought to rely on newspaper articles detailing prior accidents. Obviously, these articles were hearsay and therefore inadmissible. To no avail, plaintiffs further sought to elicit testimony on prior similar accidents from Chief Corbett and Officer Soule. Chief Corbett testified that he did not recall being on the scene of any similar accidents. (N.T. 6/27/97, pp. 69-70.) Officer Soule testified that he never made any complaint to PennDOT regarding the position and operation of the traffic signals at this intersection. (N.T. 6/26/97, pp. 132-33.)

Plaintiffs simply did not provide the requisite foundation testimony to make evidence of prior accidents admissible. Absent this, they attempted to elicit general testimony of prior accidents without any substantive foundation. Accordingly and in line with decisional law, the court precluded this testimony.

Plaintiffs' final assertion of error is that the trial court improperly refused to permit plaintiffs' counsel additional time to procure the appearance of additional fact witnesses who were under subpoena and did not exercise the court's authority to compel such appearances. Plaintiffs' statement of matters complained of on appeal, p. 4. A review of the notes of testimony of June 30, 1997 (N.T. 6/30/97, pp. 119-45), belies plaintiffs' assertions and details the reasons for granting a nonsuit. During the presentation of plaintiffs' case, the court had communicated its concern to counsel that a nonsuit was looming in light of Midkiff's testimony that he didn't see any lights. Indeed, the court recessed early on June 27, 1997 to give plaintiffs further opportunity to prepare their case on liability. On Monday, June 30, 1997, the court waited approximately one hour for plaintiffs' witness, the Nether Township Chief of Police, who had no testimony to add on liability. Sergeant El-

more, an investigating officer, was scheduled to testify at 1 p.m. but did not appear. Moreover, Elmore could not testify about an alleged hearsay statement Midkiff made to officer Soule, to wit, that Midkiff said he had a green light. Therefore, any testimony Sergeant Elmore could offer would not correct the fundamental problem confronting plaintiffs, *i.e.,* that Midkiff testified he didn't see any lights at the intersection. It would, therefore, have been fruitless to adjourn the case until the next day to wait for Sergeant Elmore to appear. Furthermore, it was not certain whether Elmore could appear even the next day.

One further clarification is necessary. At no time did the court refuse to enforce plaintiffs' subpoenas. Indeed, the court indicated its willingness to do so. (N.T. 6/27/97, p. 28.) Plaintiffs never requested the court to enforce any subpoena in this action.

It is for all the above reasons that the motion for nonsuit was granted and the motion for its removal was denied.

