**Hartenstine v. Daneshdoost**

*Todd Miller* and *Howard S. Stevens,* for plaintiff.
*James J. Dodd-o,* for defendant.

BLACK, *P.J.,* January 16, 2008—This medical malpractice case arises from three spinal surgeries performed by the defendant, Ghodrat Daneshdoost M.D., on the plaintiff, Tina A. Hartenstine, on August 8, October 8 and November 7, 2003. In her amended complaint the plaintiff alleges causes of action against the defendant for negligence (Count I) and lack of informed consent (Count II).

The defendant has moved for partial summary judgment in his favor on several of the plaintiff's claims. He requests (1) that certain of the negligence allegations be dismissed; (2) that the claims for medical expenses and loss of income be dismissed; and (3) that the claim for lack of informed consent be dismissed. For the reasons

that follow, the motion is granted in part and denied in part.

## THE SUMMARY JUDGMENT STANDARD

Summary judgment is warranted after the relevant pleadings are closed and discovery has been completed under either of the following circumstances:

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2.

In passing upon a motion for summary judgment the court must examine the record in light most favorable to the non-moving party. *Pocono International Raceway Inc. v. Pocono Produce Inc.,* 503 Pa. 80, 82, 468 A.2d 468, 470 (1983). Any doubt must be resolved against the moving party. *Chorba v. Davlisa Enterprises Inc.,* 303 Pa. Super. 497, 500, 450 A.2d 36, 38 (1982).

Nevertheless, when confronted with a motion for summary judgment, if the non-moving party bears the burden of proof on the issues that are raised, the non-moving party has an affirmative duty to produce evidence, by depositions, answers to interrogatories, admissions, af-

fidavits or expert reports, sufficient to support a jury finding in his or her favor on these issues. *Washington v. Baxter,* 553 Pa. 434, 441, 719 A.2d 733, 736 (1998). It is not sufficient for the non-moving party merely to recite in his response that he will produce evidence later at the time of trial. It is necessary that the evidence be identified and produced so that there is an adequate record for the court to review. "Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Ertel v. Patriot-News Co.,* 544 Pa. 93, 101-102, 674 A.2d 1038, 1042 (1996).

## DISCUSSION

### I. *The Claims of Negligence*

The plaintiff has the burden of proving negligence on the part of the defendant. *Hoffman v. Mogil,* 445 Pa. Super. 252, 258, 665 A.2d 478, 481 (1995). Under the law of this Commonwealth, to establish negligence in a medical malpractice case the plaintiff must present the opinion of a qualified expert to identify the applicable standard of care and any deviations from that standard by the defendant medical provider. *Brannan v. Lankenau Hospital,* 490 Pa. 588, 595-96, 417 A.2d 196, 199-200 (1980).

In paragraph 38 of the amended complaint the plaintiff alleges that the defendant was negligent in the following respects:

"(a) Failing to properly, fully or adequately diagnose the plaintiff's condition;

"(b) Failing to treat plaintiff with conservative therapies;

"(c) Failing to advise Tina Hartenstine of the risks of the procedure;

"(d) Failing to advise Tina Hartenstine of alternative treatments;

"(e) Failing to order appropriate preoperative studies;

"(f) Failing to obtain consultation with physicians appropriate to treat her condition, including without limitation, a pain management specialist;

"(g) The placement of the pedicle screws in an appropriate manner;

"(h) The placement of pedicle screws in a manner for which they were not designed, being placed lateral to the pedicles;

"(i) Performing inappropriate surgeries upon Tina Hartenstine;

"(j) Failing to advise Tina Hartenstine in a timely manner of the problems which had taken place during his (sic) surgeries;

"(k) Abandoning his patient;

"(l) Failure to heed the complaints of Tina Hartenstine, and tell her complaints needed the care of a psychiatrist; rather than the care of a competent neurosurgeon;

"(m) As a direct result of the negligence and carelessness of defendant, plaintiff sustained serious and perma-

nent injuries, including nerve damage and disfigurement;

"(n) By insertion of the pedicle screws into the psoas muscle and neural foramen;

"(o) Improper placement of the internal fixation system and pedicle screws;

"(p) Improper removal of internal fixation system and pedicle screws;

"(q) Failure to properly place pedicle screws within all pedicles on August 8, 2003;

"(r) Failure to properly place pedicle screws within pedicles on October 8, 2003;

"(s) Failure to properly stabilize the spinal column."[1]

In support of these allegations the plaintiff has submitted an expert report from Morris Pulliam M.D., F.A.C.S., a neurosurgeon. Dr. Pulliam opines in his report that the defendant failed to properly place the pedicle screws in the plaintiff's spine during the first two surgeries performed on August 8 and October 8, 2003. He identifies this as a deviation from the standard of care for a neurosurgeon. However, Dr. Pulliam does not assert any opinion regarding the allegations in subparagraphs (b), (c), (d), (e), (f), (j), (l) and (m) of paragraph 38. The plaintiff has failed to produce any evidence to support claims of negligence on these theories. Hence, summary judgment must be granted in favor of the defendant against the plaintiff with respect to the allegations of negligence in

---

1. Plaintiff's amended complaint ¶38.

subparagraphs (b), (c), (d), (e), (f), (j), (1) and (m) of paragraph 38 in the amended complaint. Summary judgment is denied on the remaining allegations of negligence.

## II. *The Claims for Medical Expenses and Loss of Income*

In her amended complaint the plaintiff claims as damages past medical expenses (paragraph 42), future medical expenses (paragraph 43), past wage loss (paragraph 44), and future wage loss (paragraph 45) as a result of the defendant's alleged medical negligence. The plaintiff has the burden of proving these damage claims. The defendant contends that the plaintiff is unable to do so. We agree in part.

## A. Past Medical Expenses

In his motion for partial summary judgment, the defendant alleges that the plaintiff has failed to provide documentation to support her claim for medical bills or expenses.[2] However, the plaintiff states that the medical bills were included with the medical records provided to the defendant. In this circumstance we do not believe that summary judgment is appropriate on this issue. We will hold an in limine hearing immediately before the commencement of trial to determine what medical bills were in fact provided by the plaintiff to the defendant and what amount is claimed for past medical expenses in accordance with the decision in *Moorhead v. Crozier*

---

2. Paragraphs 21 and 22 of motion for partial summary judgment.

*Chester Medical Center,* 564 Pa. 156, 765 A.2d 786 (2001).

At oral argument on the defendant's motion, the defendant's counsel made reference to section 508 of the Medical Care Availability and Reduction of Error (MCARE) Act. This section provides that a claimant in a medical professional liability action "is precluded from recovering damages for past medical expenses . . . incurred to the time of trial to the extent that the loss is covered by a private or public benefit or gratuity that the claimant has received prior to trial."[3]

There is an exception to this rule for "public benefits paid or payable under a program which under federal statute provides for right of reimbursement which supersedes state law for the amount of benefits paid from a verdict or settlement."[4]

The plaintiff alleges in her supplemental memorandum that her past medical expenses were paid in part by Medicare and in part by an insurance policy provided through her employment.

There is a right of reimbursement that supersedes state law for the Medicare payments.[5] Thus, we see no impediment under section 508 to the plaintiff's claim for recovery of the Medicare-reimbursed expenses. However, with respect to the expenses reimbursed by private insurance provided through the plaintiff's employment, the answer is unclear. The plaintiff claims that the private

---

3. 40 P.S. §1303.508(a) (Supp. 2007).
4. 40 P.S. §1303.508(d)(4) (Supp. 2007).
5. 42 U.S.C. §1395y(b)(2)(B)(iii).

insurance was part of a plan that qualifies under the Federal Employment Retirement Income Security Act (ERISA), 29 U.S.C. §1001 et seq. In *FMC Corporation v. Holliday*, 498 U.S. 52 (1990), the United States Supreme Court held that ERISA preempts the application of Pennsylvania law, and hence that medical expenses paid through an ERISA plan that provides a right of subrogation may be recovered in a personal injury action. What is absent from the record, though, is any evidence that the private insurance was part of an ERISA plan that provided for subrogation.

Since section 508 of the MCARE Act and the ERISA issue were raised for the first time at oral argument and are not part of the defendant's motion for partial summary judgment, we decline to act on these matters at this time. However, to avoid confusion at trial, we will take these matters up at the in limine hearing to be held immediately prior to the commencement of trial. The parties should be prepared to present evidence regarding the source or sources of the payments for the plaintiff's past medical expenses and whether these sources qualify for reimbursement under ERISA.

## B. Future Medical Expenses

The plaintiff withdrew her request for future medical expenses at oral argument on the subject motion. Hence summary judgment is granted in favor of the defendant on the claims for future medical expenses in paragraph 43 of the amended complaint.

## C. Past Wage Loss

The plaintiff has supplied the defendant with information regarding her employment history and earnings, including tax returns. This information is sufficient to afford the trier of fact a reasonably fair basis on which to calculate the plaintiff's past wage lost. Summary judgment on this issue is not warranted.

## D. Future Wage Loss

The motion for summary judgment is granted with respect to the plaintiff's claim for future wage loss. The plaintiff has not produced any expert evidence to support her claim that she will suffer a future wage loss as a result of the defendant's alleged negligence. Moreover, the plaintiff has not submitted any evidence that would enable a jury to reduce any future wage loss to present value, as required by section 510 of the MCARE Act.[6]

Plaintiff's counsel suggested at oral argument that the trial judge can reduce the jury's findings of future income to present value. This argument is unsound for several reasons. First, section 510 of the MCARE Act requires the "trier of fact," which in this case is the jury, to make these determinations, not the trial judge. In addition, this

---

6. Section 510 of the MCARE Act provides the following:

"Future damages for loss of earnings or earning capacity in a medical professional liability action shall be reduced to present value based upon the return that the claimant can earn on a reasonably secure fixed income investment. These damages shall be presented with competent evidence of the effect of productivity and inflation over time. The trier of fact shall determine the applicable discount rate based upon competent evidence." 40 P.S. §1303.510 (Supp. 2007).

same section requires that a claim for loss of future earnings be presented "with competent evidence of the effect of productivity and inflation over time," and that the trier of fact shall determine the applicable discount rate based upon "competent evidence." The plaintiff has not identified any economist, actuary or other expert competent to testify on these issues, and no report from any such expert has been provided. Consequently, there is no basis whatsoever for anyone, either the jury or the trial judge, to make the necessary computations.

In a letter to the court after oral argument, plaintiff's counsel alludes to section 509(b)(8) of the MCARE Act, which provides:

"Future damages for medical and other related expenses shall not be awarded in periodic payments if the claimant objects and stipulates that the total amount of the future damages for medical and other related expenses, without reduction to present value, does not exceed $100,000."[7]

This section applies by its terms only to future damages for "medical and other related expenses." A claim for future wage loss does not fall within this category of damages.

Therefore, in the absence of any expert evidence that the plaintiff will be unable to perform the duties of her employment in the future because of the defendant's alleged medical negligence, and the further absence of any evidence that would enable the jury to reduce a claim for

---

7. 40 P.S. §1303.509(b)(8) (Supp. 2007).

future wage loss to present value, the plaintiff's claim for future wage loss cannot succeed. Accordingly, summary judgment must be granted to the defendant against the plaintiff on the plaintiff's future wage loss claim.

### III. *The Informed Consent Claim*

The plaintiff alleges in Count II of her amended complaint that the defendant did not obtain her informed consent prior to performing the three surgeries on her spine. Without her informed consent to the surgical procedures, these procedures would have been tortious batteries, for which she would be entitled to compensation whether or not the defendant was negligent. *Gouse v. Cassel,* 532 Pa. 197, 204, 615 A.2d 331, 334 (1992).

Section 504(b) of the MCARE Act provides:

"Consent is informed if the patient has been given a description of a procedure set forth in subsection (a) and the risks and alternatives that a reasonably prudent patient would require to make an informed decision as to that procedure. The physician shall be entitled to present evidence of the description of that procedure and those risks and alternatives that a physician acting in accordance with accepted medical standards of medical practice would provide." [8]

A claim for lack of informed consent is actionable under section 504(d) of the Act "only if the patient proves that receiving such information would have been a substantial factor in the patient's decision whether to un-

---

8. 40 P.S. §1303.504(b) (Supp. 2007).

dergo the procedure."[9] Under section 504(c), expert testimony is required to identify "the risks of that procedure, the alternatives to that procedure and the risks of these alternatives."[10] See also, *Festa v. Greenberg,* 354 Pa. Super. 346, 356, 511 A.2d 1371, 1376 (1986). Without this information the fact-finder cannot properly evaluate these risks to determine if they are sufficiently material to sustain a claim of lack of informed consent. *Bey v. Sacks,* 789 A.2d 232, 238 (Pa. Super. 2001).

In the instant case the defendant contends that the plaintiff has failed to submit an expert report that can sustain her burden on the lack of informed consent claim. The only expert report produced by the plaintiff is that of Dr. Pulliam, who focuses exclusively on the negligence of the defendant in the placement of the pedicle screws during the surgeries. Dr. Pulliam's report does not address the defendant's alleged failure to discuss risks attendant with the surgical procedures, the alternative methods of treatment, or risks associated with the alternatives.

The plaintiff contends that she does not need an expert to discuss the risks of alternative methods of treatment because of the defendant's deposition testimony. In his deposition the defendant testified that he had informed the plaintiff, prior to the initial surgery, that conservative treatment, including a back brace, muscle relaxers, and rest, was an option, and that the surgery he was going to

---

9. 40 P.S. §1303.504(d) (Supp. 2007).
10. 40 P.S. §1303.504(c) (Supp. 2007).

perform had attendant risks.[11] However, this testimony does not satisfy the expert evidence requirement. It does not identify and explain the risks associated with the alternative treatments. Therefore, the plaintiff's claim for lack of informed consent to the initial surgery on August 8, 2003, must be dismissed.

We reach a different conclusion regarding the second and third surgeries on October 8 and November 7, 2003. In her complaint and supplemental memorandum the plaintiff alleges that prior to the second surgery the defendant misinformed her as to the reason the first surgery had been unsuccessful.[12] She claims that instead of telling her that he had failed to place the pedicle screws properly, he stated that the screws came loose because her bones were too soft. In the affidavit attached to her supplemental memorandum, she states that if the defendant had revealed the correct information to her, she would not have allowed him to perform the later surgeries.

This is not a classic type of informed consent claim. It is in essence a claim of misrepresentation, rather than a claim that the risks of alternative procedures were not disclosed. Nevertheless, we believe that this claim, if proved at trial, is a viable one. Our Supreme Court has held that a surgical procedure performed without the patient's consent is actionable as a battery. *Montgomery v. Bazaz-Sehgal,* 568 Pa. 574, 798 A.2d 742 (2002). Where the patient's consent has been induced by an in-

---

11. Plaintiff's response to defendant's motion for partial summary judgment on claims of negligence and informed consent, exhibit A, 10, 15, 60.

12. See complaint, ¶20.

tentional misrepresentation, the result must be the same. A consent induced by a knowing misrepresentation is ineffective. The surgical procedure subsequently performed is therefore a battery, and the physician is liable for damages without proof of negligence.

A medical battery claim based on a misrepresentation does not require expert testimony as to the alternate treatments available and the risks of those alternate treatments. The reason is that the patient's claim is not grounded in the physician's failure to disclose such information, but rather on the physician's affirmative misrepresentation. The issues are whether the physician made a misrepresentation, whether he knew the representation was false, whether he intended to induce the patient's consent by means of the misrepresentation, and whether the patient reasonably relied on the misrepresentation. These issues are well within the competence of a jury. We do not believe that expert testimony is required.

Our Supreme Court has previously held that the physician's skill or lack of skill in performing the proposed operation need not be disclosed in order to obtain the patient's informed consent. *Duttry v. Patterson,* 565 Pa. 130, 771 A.2d 1255 (2001). In *Duttry,* the patient had questioned the physician specifically about his experience in performing the type of operation he was recommending. The physician responded falsely that he performed this procedure approximately once every month, whereas in point of fact, he had performed the procedure only nine times in the preceding five years. The Supreme Court rejected the patient's claim of lack of informed consent, holding that evidence of a physician's personal

characteristics and experience is irrelevant to an informed consent claim.

The holding in *Duttry,* however, is no longer the law of Pennsylvania. Section 504(d)(2) of the MCARE Act, adopted the following year, now provides:

"A physician may be held liable for failure to seek a patient's informed consent if the physician knowingly misrepresents to the patient his or her professional credentials, training or experience."[13]

The misrepresentation theory advanced here is analogous to section 504(d)(2). In this case the alleged misstatement as to the reason the first surgery failed was relevant to the defendant's experience in performing such surgeries. Whether this misrepresentation was made by the defendant with knowledge of its falsity, and whether the plaintiff reasonably relied on it in consenting to the second and third surgeries, is a jury question that does not require expert testimony.

For these reasons, the defendant's motion for partial summary judgment is granted on the plaintiff's claim for lack of informed consent to the first surgery, but is denied on the plaintiff's claim for lack of informed consent to the second and third surgeries.

## ORDER

Now, October 25, 2007, upon consideration of defendant's motion for partial summary judgment on the claims of negligence, damages, and informed consent,

---

13. 40 P.S. §1303.504(d)(2).

and plaintiff's response thereto, after review of the parties' briefs and oral argument, and for the reasons set forth in the accompanying opinion, it is ordered as follows:

(1) With respect to plaintiff's allegations of negligence, the motion for partial summary judgment is granted with respect to paragraphs 38(b), 38(c), 38(d), 38(e), 38(f), 38(j), 38(l) and 38(m) of the amended complaint, and summary judgment is entered in favor of defendant against plaintiff on those claims. The motion is denied with respect to the allegations of negligence in paragraphs 38(a), 38(g), 38(h), 38(i), and 38(n) through 38(s) inclusive.

(2) With respect to the allegations of damages, the motion for partial summary judgment is granted on the claims for future medical expenses in paragraph 43 and future wage loss in paragraph 45 of the amended complaint, and summary judgment is entered for defendant against plaintiff on those claims. The motion is denied on the claim for past medical expenses in paragraph 42 of the amended complaint, subject to an in limine hearing immediately before the commencement of trial in accordance with the accompanying opinion. The motion is also denied with respect to the claim for past wage loss in paragraph 44 of the amended complaint.

(3) With respect to the claim of lack of informed consent in Count II of the amended complaint, the motion for partial summary judgment is granted as to the initial surgery on August 8, 2003, and summary judgment is entered for defendant against plaintiff on the claim in Count II for this surgery. The motion is denied as to the subsequent surgeries on October 8 and November 7, 2007.