417 A.2d 196

**Stephen BRANNAN, Appellant,**

v.

**LANKENAU HOSPITAL, Hunter S. Neal, M.D., Eugene B. Rex, M.D., Clifton F. West, Jr., M.D.**

Supreme Court of Pennsylvania.

Argued April 21, 1980.

Decided July 3, 1980.

Reargument Denied Aug. 15, 1980.

Joseph D. Shein, Philadelphia, for appellant.

Ralph L. Hose, A. Grant Sprecher, Philadelphia, John C. Bonner, Norristown, for appellees.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

In this malpractice action, appellant Stephan Brannan seeks to recover from appellees, Lankenau Hospital and Drs. Eugene Rex and Clifton West, Jr. We are asked to review the trial court's removal from the jury's consideration questions of whether appellees Drs. Rex and West negligently treated appellant's infection and also whether appellee Lankenau Hospital is liable for its intensive care unit staff's failure properly to monitor appellant's condition. Review of this record discloses that appellant presented sufficient evidence to warrant submission of these issues to the jury. Accordingly, we reverse the order of the Superior Court, 254 Pa.Super. 352, 385 A.2d 1376, affirming the trial court's denial of appellant's motions to remove the nonsuits.

On Saturday evening, August 28, 1965, appellant attended a wedding reception at the William Penn Civic Club in Philadelphia. Soon after arriving at the club, he obtained a roast beef sandwich and a glass of beer. His first bite of the thickly sliced beef sandwich became lodged deep in his throat, blocking the throat passage. He immediately attempted to remove the obstruction, but was unsuccessful. Appellant left the reception and went home. There he drank fluids, but still he could not remove the blockage.

After a sleepless night, appellant went to the emergency room at Lankenau Hospital. There, appellee Dr. Rex, ordered x-rays, examined appellant, and recommended surgery for removal of the impacted piece of meat. Appellant initially refused surgery, preferring to await the natural passage of the beef. After Dr. Rex informed appellant that the procedure typically involved only an overnight hospital stay, appellant agreed to the operation.

At approximately 4:00 p. m. on August 29, Dr. Rex performed an esophagoscopy on appellant to relieve the blockage. During the surgical procedure, Dr. Rex removed several small portions of meat, eventually reducing the size of the portion to allow its passage into appellant's stomach. The surgery, however, was imperfect. Dr. Rex's operative notes reflect that a screw on the forward grasping forceps broke while inside appellant's esophagus. As a result, the forceps opened suddenly and its narrow, pointed ends touched the walls of the esophagus. Dr. Rex made a visual inspection of the esophageal wall in search of possible perforations. At that time, however, the doctor found no evidence of perforation.

Appellant was taken from the operating theatre and placed in the recovery room. Shortly after appellant awoke from the anesthesia, he suffered abdominal cramps. By 8:00 p. m., appellant's body temperature had increased to 100.4°. Hospital employees promptly notified Dr. Rex of this change in appellant's condition. Dr. Rex in turn requested that appellee Dr. West, an associate surgeon at Lankenau, examine appellant. Dr. Rex left the hospital without informing

Dr. West that the forceps broke during the operation and possibly perforated the esophagus.

At about 11:00 p. m., Dr. West, reviewed appellant's x-rays, then telephoned Dr. Rex at home to discuss appellant's condition. Dr. West informed Dr. Rex that the x-ray did not clearly indicate a perforated esophagus. Dr. West ordered hospital employees to monitor appellant's vital signs and to transfer appellant to the main surgical floor intensive care unit of the hospital. Dr. West then left the hospital.

At 4:00 a. m. the next morning hospital personnel transferred appellant to the intensive care ward. Appellant's temperature then had risen to 100.6° or 100.8°. No additional temperature recordings were noted until several hours later that morning. At 8:00 a. m. Dr. West returned to the hospital and discovered that appellant's temperature had increased to 101.8°. Appellant's rate of respiration and pulse had also elevated. Despite appellant's removal to the intensive care unit, no hospital personnel monitored this change in appellant's condition. Nor did intensive care personnel notify Dr. West of these changed circumstances. At 8:00 a. m. Dr. West for the first time diagnosed appellant's condition as a perforated esophagus. By way of treatment, he then ordered the administration of antibiotics.

Appellant received the first dosage of antibiotics at 12:30 p. m., more than four hour after Dr. West's order. By that time infection had set in. As a result of the infection, appellant suffered a meningeal stroke, was forced to undergo several additional surgical procedures and lost the full use of his right arm and left leg. These disabilities kept appellant from continuing his previous employment.

Appellant initiated this malpractice action against Lankenau Hospital on August 28, 1967.[1] Lankenau joined Drs.

1. This case arose prior to the enactment of the Health Care Services Malpractice Act, Act of October 15, 1975, P.L. 390, 40 P.S. § 1301.101 et seq. Thus, the action proceeded to trial in the court of common pleas, rather than before an arbitration panel.

Rex, West and Hunter S. Neal as additional defendants.[2] The parties engaged in extensive pre-trial discovery, and trial began on December 10, 1974. Appellant proceeded against Dr. Rex on the multiple theories of negligence, alleging that Dr. Rex (1) negligently punctured appellant's esophagus during surgery when the forceps he used broke, (2) failed to diagnose and treat appellant's punctured esophagus in a timely manner, (3) did not obtain appellant's "informed consent" to this surgical procedure, and (4) failed to inform Dr. West of the forcep problem. Against Dr. West, appellant proceeded on the theory of failure to administer antibiotics at an earlier time. Finally, appellant alleged that Lankenau Hospital, on a theory of respondeat superior, failed to provide adequate care during the time appellant remained in the intensive care unit. At the close of appellant's case, the Court of Common Pleas of Montgomery County granted involuntary nonsuits in favor of Lankenau, Dr. Neal and Dr. West. The court also refused to submit to the jury the issue of Dr. Rex's failure to administer antibiotics at an earlier time. The court did permit appellant's case against Dr. Rex to go to the jury on the other three issues: that the surgery was negligently performed, that Dr. Rex failed to notify Dr. West of the forcep problem, and that appellant had not "consented" to surgery.

The court justified the nonsuit in favor of Lankenau on the ground that appellant failed to introduce any expert testimony regarding hospital practice, and thus, the issue was not for the jury. As to the alleged negligence of Drs. West and Rex in failing to administer antibiotics, the court determined that appellant's expert witness (1) "gave contradictory statements with regard to defendants' negligence" and (2) made it clear that the doctors acted consistently with a respected body of medical thought.

2. Dr. Neal treated appellant following Dr. West's diagnosis of infection. Most of the additional surgery on appellant was performed by Dr. Neal, and appellant consulted with Dr. Neal, throughout his treatment for the injuries resulting from the infection. Dr. Neal, however, was removed as a defendant when the trial court granted a nonsuit in his favor. Appellant does not challenge that portion of the trial court's order.

After consideration of the limited issues presented, the jury returned a verdict in favor of Dr. Rex. Appellant filed motions for judgment n. o. v. and a new trial. Following argument, on the motions, the court en banc on April 8, 1976, denied appellant's post-trial motions.[3] On appellant's appeal, the Superior Court, (Van der Voort, J., dissenting in part), rejected appellant's contentions and affirmed the trial court order denying appellant relief. We granted allowance of appeal.

In passing on the trial court's refusal to grant appellant's motion to strike the nonsuits entered in favor of appellees, we must view "the evidence adduced on behalf of the plaintiff as true; reading it in the light most favorable to him; giving him the benefit of every reasonable inference that a jury might derive from the evidence and resolving all doubts, if any, in his favor." *Auel v. White*, 389 Pa. 208, 210, 132 A.2d 350, 352 (1957). Appellant's evidence, when reviewed in light of this standard, is sufficient to avoid the entry of a nonsuit in favor of Drs. Rex and West.

Appellant must satisfy the burden of proving that the act of the physicians or hospital fell below the standard of care owed him. *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978); *Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971); *Donaldson v. Mafucci*, 397 Pa. 548, 156 A.2d 835 (1960). To satisfy his burden of proving Drs. Rex and West negligent in failing to administer antibiotics earlier, appellant must introduce expert testimony to show that appellee physicians' conduct varied from accepted medical practice. *Chandler v. Cook*, 438 Pa. 447, 265 A.2d 794 (1970); *Dornon v. Johnston*, 421 Pa. 58, 218 A.2d 808 (1966). This require-

---

**3.** When this case was on appeal to the Superior Court, the trial court filed an opinion pursuant to Pa.R.A.P. 1925, that did not support the April 8 order of the court en banc. Rather, the trial judge concluded that appellant should be granted a new trial against Drs. Rex and West. The trial judge issued an order to that effect on September 7, 1976. Appellees moved to strike the September 7 order. Their motion was granted by the Superior Court on September 23, 1976, on the ground that the trial court acted beyond the scope of its jurisdiction in attempting to modify the April 8 order after an appeal had been filed. See Pa.R.C.P. 1701(a).

ment stems from judicial concern that, absent the guidance of an expert, jurors are unable to determine relationships among scientific factual circumstances. *McMahon v. Young*, 442 Pa. 484, 276 A.2d 534 (1971); *Florig v. Sears, Roebuck and Co.*, 388 Pa. 419, 130 A.2d 445 (1957).

■ We are satisfied that appellant offered competent testimony to establish that Drs. Rex and West failed to administer antibiotics at the earliest opportunity. On direct, appellant's expert Dr. Thompson testified that the recognized standard of care among physicians required the administration of antibiotics immediately upon suspicion of a perforated esophagus. Dr. Thompson stated that both Dr. Rex and Dr. West acted negligently in failing to administer the drugs at the earliest time perforation was suspected.

■ We cannot accept the Superior Court's view that Dr. Thompson sufficiently equivocated on his direct and re-direct testimony to justify the conclusion that a verdict based upon his testimony would be conjecture. Although after one day of direct testimony Dr. Thompson did indicate on re-direct the next day that he "can't answer" whether appellees' conduct fell below the 1965 standard of care in medical practice, when asked again in that same testimony Dr. Thompson reaffirmed his earlier direct testimony that appellees' conduct was below the standard. It is true we have previously held that a plaintiff's case will fail when the testimony of his two expert witnesses is so contradictory that the jury is left with no guidance on the issue, *Mudano v. Phila. Rapid Transit Co.*, 289 Pa. 51, 137 A. 104 (1927). There, however, we stated that the plaintiff's experts must "so vitally disagree on essential points as to neutralize each other's opinion evidence." Id., 289 Pa. at 61, 137 A. at 108. Indeed, since that decision, this Court has allowed juries to consider and resolve conflicts among expert witnesses. See *Morrisey v. Commonwealth, Department of Highways*, 440 Pa. 71, 269 A.2d 866 (1970) (conflicts in expert testimony on valuation); *Abrams v. Phila. Transp. Co.*, 438 Pa. 115, 264 A.2d 702 (1970) (jury may resolve conflict between parties' medical experts). See *Ayoub v. Spencer*, 550 F.2d 164 (3d

Cir. 1977), cert. denied, 432 U.S. 907, 97 S.Ct. 2952, 53 L.Ed.2d 1079 (1977). Furthermore, we have held that conflicts in testimony are fatal only if absolute. *Menarde v. Phila. Transp. Co.*, 376 Pa. 497, 103 A.2d 68 (1954). See *Simmons v. Mullen*, 231 Pa.Super. 199, 331 A.2d 892 (1974); *Fady v. Danielson Construction Co.*, 224 Pa.Super. 33, 302 A.2d 405 (1973). Thus, unlike the Superior Court, we do not believe this relatively minor divergence in only a part of appellant's expert testimony, when viewed against the testimony as a whole, sufficiently compromised the witness' testimony on direct to justify removal of this issue from jury consideration.[4]

It would equally be error to hold that Dr. Thompson's testimony established sufficient support for appellee doctors' conduct. There is, of course, the longstanding rule that the jury may not decide which of "two methods, both having their respective advocates and followers of respectable authority, was the safer and better from the surgical standpoint." *Tobash v. Jones*, 419 Pa. 205, 217, 213 A.2d 588, 593 (1965), quoting *Remley v. Plummer*, 79 Pa.Super. 117 (1922). In *Duckworth v. Bennett*, we stated the rule as, "where competent medical authority is divided, a physician will not be held responsible if in the exercise of his judgment he followed a course of treatment advocated by a considerable number of his brethren in good standing in his community." 320 Pa. 47, 51, 181 A. 558, 559 (1935). Here, appellant's expert initially testified that he knew of no reason to await final diagnosis of esophageal perforation before administering antibiotics. Although on cross-examination the expert indicated that a "small respected body" of medical practitioners believed otherwise, this is a far cry from treatment

4. For the same reasons we cannot accept appellees' alternative contention that Dr. Thompson's suggestion, on cross-examination, that a "small respected body" of medical practice supported appellees' actions makes Dr. Thompson's testimony unavailable for jury consideration.

We note that appellant does not contend appellees' cross-examination of Dr. Thompson barred appellees' motion for a nonsuit. See generally *Smith v. Standard Steel Car Co.*, 262 Pa. 550, 106 A. 102 (1919); *Hughes v. Westmoreland Coal Co.*, 104 Pa. 207 (1883).

approved by a considerable number of physicians. Indeed, the expert witness reaffirmed on cross-examination that "the great majority" of physicians would not apply the practice appellee doctors utilized here. Thus, we cannot agree with appellees that Dr. Thompson's testimony alone triggered the application of the *Duckworth* standard regarding "a course of treatment advocated by a considerable number of his brethren."

 The trial court similarly erred in granting the nonsuit in favor of Lankenau Hospital. We have previously discussed the rule requiring that expert testimony be introduced in malpractice actions to establish negligence. *Hamil v. Bashline,* supra; *Chandler v. Cook,* supra; *Dornon v. Johnston,* supra. There is an exception to that rule when, "the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even non professional persons." *Chandler v. Cook,* supra, 438 Pa. at 451, 265 A.2d at 796; *Collins v. Hand,* 431 Pa. 378, 246 A.2d 398 (1968); *Smith v. Yohe,* 412 Pa. 94, 194 A.2d 167 (1963). See generally, Restatement (Second) of Torts § 323B(d). We think it clear that staff failure to notify the attending physician of the deteriorating condition of one of his patients falls within the exception to the requirement of expert testimony.[5] Dr. West, upon arrival at the hospital on August 30, discovered that appellant's condition had deteriorated during the night. His testimony at trial, corroborated by Dr. Rex, indicated that the usual and customary practice in these circumstances requires that a hospital staff member notify the attending physician of changes in the patient's status. See also *Keene v. Methodist Hospital,* 324 F.Supp. 233 (N.D.Ind.1971). On the preceding evening, Dr. West left explicit orders that appellant was to be moved to an intensive care unit and that hospital personnel were to monitor

---

**5.** With respect to Lankenau, it is not clear why the hospital failed to administer until 12:30 p. m., antibiotics ordered by Dr. West at 8:00 a. m.

appellant's vital signs.[6] During the night, no hospital staff member monitored changes in appellant's condition or notified Dr. West. Staff failure here so to notify the supervising physician is a glaring example of want of care. Thus, it was for the jury to consider Lankenau's liability.

We conclude that the trial court erroneously removed from the jury the issue of appellee's negligent failure to administer antibiotics at the time esophageal perforation was first suspected. Likewise, the trial court improperly entered a nonsuit in favor of appellee Lankenau Hospital.[7]

Accordingly, we reverse the order of the Superior Court and remand to the trial court for proceedings consistent with this opinion.

6. From the record, it is not clear why the order Dr. West issued at 11:00 p. m., removing appellant to intensive care, was not executed until 4:00 a. m.

7. In light of our disposition on these claims, we need not reach appellant's additional contentions of trial court error.