**Gloria VAZQUEZ, Appellant**

v.

**CHS PROFESSIONAL PRACTICE, P.C., t/a Coordinated Health, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 6, 2011.
Filed Feb. 21, 2012.

---

Scott E. Schermerhorn, Scranton, for appellant.

Shawn P. Phillips, Bethlehem and Stephanie L. Hersperger, Harrisburg, for appellee.

BEFORE: FORD ELLIOTT, P.J.E., BOWES, and OLSON, JJ.

OPINION BY BOWES, J.:

Gloria Vazquez appeals the June 9, 2011 order granting CHS Professional Practice, P.C., t/a Coordinated Health's ("CHS") motion for summary judgment in this medical negligence action. Ms. Vazquez was proceeding on the theory that the doctrine of *res ipsa loquitur* obviated any need for expert medical testimony. The trial court held that the specific factual circumstances of Ms. Vazquez's injury were beyond the comprehension of the average layperson, that the injury could occur in the absence of negligence, and that she had not eliminated other possible causes, thus rendering the doctrine of *res ipsa loquitur* inapplicable. We agree and affirm.

Ms. Vazquez commenced the within action via a writ of summons on February 29, 2009. After CHS ruled her to file a complaint, she complied, seeking damages for the negligent removal of a pain pump catheter by a physician's assistant employed by CHS, which resulted in a fragment of the catheter remaining in her left shoulder. Due to the alleged negligence, Ms. Vazquez was required to undergo a second arthroscopic procedure a week later to remove the piece of medical device. In her certificate of merit filed pursuant to Pa.R.C.P. 1042.3(a)(3), she averred that expert testimony of an appropriately licensed medical professional was unnecessary for the prosecution of her claim.

At the close of the pleadings, CHS filed a motion for summary judgment pursuant to Pa.R.C.P. 1035.2, alleging that catheters can and do break in the absence of negli-

gence and attached the report of Elliott H. Leitman, M.D., a board-certified orthopedic surgeon, to that effect. Thus, CHS argued, *res ipsa loquitur* was inapplicable and, in the absence of competent expert medical testimony, Ms. Vazquez could not make out a cognizable medical negligence claim.

On June 9, 2011, following submission of briefs and oral argument, the trial court granted summary judgment in favor of CHS. Ms. Vazquez timely appealed to this Court and the trial court ordered her to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Ms. Vazquez complied and the trial court issued its Pa.R.A.P. 1925(a) opinion. Ms. Vazquez's sole contention on appeal is that the trial court erred in granting CHS's motion for summary judgment on the ground that expert testimony was required to prove negligence rather than the application of the doctrine of *res ipsa loquitur*. Appellant's brief at 4.

 "Our scope of review of a trial court's order granting or denying summary judgment is plenary[.]" *Krapf v. St. Luke's Hospital*, 4 A.3d 642, 649 (Pa.Super.2010). We may not disturb the order of the trial court unless it is established that the court committed an error of law or abused its discretion. *Coleman v. Wyeth Pharmaceuticals, Inc.*, 6 A.3d 502 (Pa.Super.2010).

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Coleman, supra,* at 509 (quoting *ADP, Inc. v. Morrow Motors Inc.,* 969 A.2d 1244, 1246 (Pa.Super.2009)). Summary judgment should be granted when the "party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." *Ertel v. Patriot–News Co.,* 544 Pa. 93, 674 A.2d 1038, 1041–42 (1996).

Medical malpractice consists of a negligent or unskillful performance by a physician of the duties which are devolved and incumbent upon him on account of his relations with his patients, or of a want of proper care and skill in the performance of a professional act. *Mutual Ben. Ins. Co. v. Haver,* 555 Pa. 534, 725 A.2d 743 (Pa.1999); *Hodgson v. Bigelow,* 335 Pa. 497, 7 A.2d 338, 342 (Pa.1939). Because medical malpractice is a form of negligence, to state a *prima facie* cause of action, a plaintiff must demonstrate the elements of negligence: "a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of harm." *Hightower–Warren v. Silk,* 548 Pa. 459, 698 A.2d 52, 54 (Pa. 1997). With all but the most self-evident medical malpractice actions there is

also the added requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation. *Id.* *Quinby v. Plumsteadville Family Practice, Inc.*, 589 Pa. 183, 907 A.2d 1061, 1070–1071 (2006).

In the instant case, Ms. Vazquez filed a certificate of merit indicating that expert testimony was unnecessary to present a *prima facie* case of medical negligence against CHS.[1] She viewed the malpractice herein as "so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even non professional persons[,]" that expert testimony was not required. *See Brannan v. Lankenau Hospital*, 490 Pa. 588, 417 A.2d 196, 201 (1980). She intended to rely upon the doctrine of *res ipsa loquitur*, which allows the fact-finder to infer from the circumstances surrounding the injury that the harm suffered was caused by the negligence of the defendant or its agent when

 (a) the event is of a kind which ordinarily does not occur in the absence of negligence;

 (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

 (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

Restatement (Second) of Torts § 328D. "It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn." Restatement (Second) of Torts § 328D (2). *See Bearfield v. Hauch*, 407 Pa.Super. 624, 595 A.2d 1320 (1991).

The trial court held first that, given the varying theories as to how or why the catheter broke, expert testimony was required. It ruled that this case was not one that was so simple, or the negligence so obvious, as to be within the common understanding of laypersons. Ms. Vazquez contends, however, that the court erred and she characterizes the instant case as a "self-evident medical malpractice action." Appellant's brief at 8.

Ms. Vazquez analogizes the piece of catheter in her shoulder to the plaintiff who sustained a collapsed lung and was unable to breathe immediately following a cortisone injection for back pain in *Toogood v. Rogal*, 764 A.2d 552 (Pa.Super.2000), and a quadriplegic who fell from an examination table in *Quinby v. Plumsteadville Family Practice, Inc., supra.* As CHS points out, however, Ms.

---

1. Pa.R.C.P. 1042.3(a) requires the attorney for plaintiff in any action alleging that a licensed professional deviated from the standard of care to file a certificate of merit that either:

 (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

 (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

 (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Note: In the event that the attorney certifies under subdivision (a)(3) that an expert is unnecessary for prosecution of the claim, in the absence of exceptional circumstances the attorney is bound by the certification and, subsequently, the trial court shall preclude the plaintiff from presenting testimony by an expert on the questions of standard of care and causation.

Vazquez's reliance upon our decision in *Toogood, supra,* is misplaced as the Supreme Court subsequently reversed this Court and held *res ipsa loquitur* inapplicable. *Toogood v. Rogal,* 573 Pa. 245, 824 A.2d 1140 (2003) (plurality)[2]. Our High Court observed that expert medical testimony was required to assist the jury in evaluating the reasonableness of the physician's decision to make the injection at a particular location. In so holding, the Court cautioned that *res ipsa loquitur* must be "carefully limited" and recognized that "negligence demands a complete understanding of the procedure the doctor is performing and the responsibilities upon him at the moment of injury." *Id.* at 1149.

Nor does *Quinby, supra,* support Ms. Vazquez's position. We agree with CHS that a quadriplegic falling from a table did not involve the "complex issues of anatomy, medical science, invasive procedures, and precision performance." *Toogood, supra,* at 1150. Laypeople would understand, without knowledge of medical principles, that such a fall would not happen absent negligence.

■ We agree with the trial court that the standard of care in removing a catheter is beyond the ken of the average layperson. Whether that standard was breached required expert testimony. We also agree with the trial court that Ms. Vazquez failed to satisfy the first two prongs of the three-prong framework for application of the doctrine of *res ipsa lo-*

*quitur* set forth in the Restatement (Second) of Torts § 328D.

Herein, CHS offered the expert report of Dr. Leitman that fracture of a catheter during removal is a known risk, which can occur in the absence of negligence. Motion for Summary Judgment, Exhibit D, at 2. Dr. Leitman explained that when the catheter is inserted following surgery, "the joint is frequently distended with arthroscopic fluid or distended with traction applied to the right upper extremity." *Id.* at 1. When the pump is subsequently removed, the slots in the plastic device can "encounter resistance within the soft tissues of the shoulder or within the joint itself." *Id.* Based on his education and experience in shoulder surgeries, Dr. Leitman concluded that "the breakage of a[n] intra[-]articular catheter does not represent a deviation of acceptable medical standards and is more likely due to the design of the catheter itself." *Id.* at 2.

Ms. Vazquez offered no contrary expert testimony.[3] Instead, she points to the article cited by Dr. Leitman as evidence that catheter breakage is rare, and cites *Leone v. Thomas,* 428 Pa.Super. 217, 630 A.2d 900 (1993), for the proposition that where an occurrence is unusual, the jury should be permitted to infer negligence.

We note first that *Leone* was decided prior to Pa.R.C.P. 1042.3 and the requirement of certificates of merit in professional liability actions. The issue of the doctrine's applicability did not arise until trial

**2.** We note that while *Toogood* is an opinion announcing the judgment of the Court, a majority of the Court reversed our application of *res ipsa loquitur.*

**3.** CHS stated that because Ms. Vazquez filed a Pa.R.C.P. 1042.3(a)(3) certificate of merit, *i.e.,* that an expert was unnecessary for the prosecution of the claim, it would have opposed any request that she be permitted to utilize an expert to invoke *res ipsa loquitur.*

While the Note to that subsection of the rule provides that, "in the absence of exceptional circumstances the attorney is bound by the certification," and that "the trial court shall preclude the plaintiff from presenting testimony by an expert on the questions of standard of care and causation," we are unaware of any case law interpreting this subsection as precluding expert testimony to establish that *res ipsa loquitur* may properly be invoked.

when the plaintiff asked the trial court to charge the jury on *res ipsa loquitur*. The trial court denied the request and the jury returned a verdict for defendant doctor. On appeal, we held that the trial court erred in failing to instruct the jury on *res ipsa loquitur*. However, our holding in *Leone* turned not on the rarity of the injury, as Appellant posits, but upon conflicting evidence of whether the injury was attributable to negligence. The defendant first adduced expert testimony undermining the notion that plaintiff's injury resulted from the physician's negligence. The Leones produced expert testimony to the effect that the plaintiff's injury was not a usual complication and that the surgical performance by defendant physician was substandard. We held this latter testimony equivalent to "a statement indicating that an event would not occur in the absence of negligence." *Leone, supra,* at 902. We concluded that the Leones were only required to produce evidence that would permit the conclusion that it was more likely than not that the injuries were caused by the physician's negligence in order to satisfy the elements of Section 328D, and then the jury would be permitted to draw the conclusion that it was the defendant's fault.

Missing in the instant case is any evidence that the physician's assistant performed the procedure in a substandard manner or that catheters do not break unless someone is negligent. Thus, Ms. Vazquez failed to produce evidence which would permit the conclusion that it is more likely than not that her injury was caused by the physician's assistant's negligence. Having failed to introduce testimony that would satisfy the first prong of the test for the application of *res ipsa loquitur*, summary judgment was appropriate.

Additionally, CHS insists that with regard to a broken device or instrument, the second prong of the test for *res ipsa loquitur* is not easily met. It directs our attention to a line of broken needle cases where courts from other jurisdictions have recognized that needles break from various causes, such as a defect in the needle, sudden movement of the patient, or negligence. *See Locke v. Pachtman,* 446 Mich. 216, 521 N.W.2d 786, 794 (1994); *Williams v. Chamberlain,* 316 S.W.2d 505, 513 (Mo. 1958). Similarly, other courts have held *res ipsa loquitur* inapplicable where the tip of a catheter broke off during surgery. *Losier v. Ravi,* 362 S.W.3d 639, 2009 WL 3365867 (Tex.App.2009) (defense expert opined that catheter can break despite reasonable care); *Culver v. Ochsner Foundation Hospital,* 474 So.2d 984, 994 (La.App. 5 Cir.1985) (plaintiff's expert conceded that it is not uncommon for catheters to break). CHS insists that Ms. Vazquez failed to offer expert testimony reasonably ruling out other causes, namely defective design, manufacture, or malfunction, in order to satisfy the second prong of the *res ipsa loquitur* test. Appellee's brief at 25.

In response to CHS's argument, Ms. Vazquez argues that since the pain pump at issue was approved by the FDA, there is a presumption that it was safe for its intended use. Appellant's brief at 12. Furthermore, Ms. Vazquez claims that due to the preemption clause of the Medical Device Amendments, 21 U.S.C. § 360k(a), she was barred from pursuing a products liability action against the manufacturer. She concludes, without any logical basis, that these facts reasonably rule out a defect in the catheter as the cause of the breakage.

■ We need not reach the merits of the preemption argument in order to dispose of Ms. Vazquez's unsupported assertion that FDA approval precludes any finding that the particular catheter in use herein was defective. There was no evi-

dence adduced that the catheter at issue actually complied with FDA regulations. Moreover, neither preemption nor the manufacturer's immunity in a state products liability action operates to relieve Ms. Vazquez from reasonably ruling out other causes of the injury. Absent expert testimony that it was more probable than not that CHS's physician's assistant deviated from the standard of care in the removal of the catheter or that the catheter herein was not defective, Ms. Vasquez did not establish the second prong of the test for the application of *res ipsa loquitur.*

Thus, we agree with the trial court that Ms. Vazquez failed to satisfy both the first and second prongs of Section 328D of the Restatement (Second) of Torts so as to permit the application of *res ipsa loquitur.* Expert testimony was required in order to make out a *prima facie* medical negligence case. Hence, Ms. Vazquez "failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury," *Ertel v. Patriot–News Co., supra,* at 1041–1042, and summary judgment was properly entered.

Order affirmed.