J-A07033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MARIA HEDDLESTON AND BRIAN HEDDLESTON, HER HUSBAND<br><br>Appellant<br><br>v.<br><br>OBSTETRICAL AND GYNECOLOGICAL ASSOCIATES OF PITTSBURGH, INC., D/B/A OB/GYN ASSOCIATES OF PITTSBURGH, RENATA D. HOCA, M.D.; PEDIATRIC ALLIANCE, P.C. D/B/A THE BREASTFEEDING CENTER OF PITTSBURGH, NANCY BRENT, M.D.; MAGEE WOMEN'S HOSPITAL-UPMC; AND UPMC | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br>No. 443 WDA 2015 |

Appeal from the Order of March 2, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD12-10765

| | |
|---|---|
| MARIA HEDDLESTON AND BRIAN HEDDLESTON, HER HUSBAND<br><br>Appellant<br><br>v.<br><br>OBSTETRICAL AND GYNECOLOGICAL ASSOCIATES OF PITTSBURGH, INC., D/B/A OB/GYN ASSOCIATES OF PITTSBURGH, RENATA D. HOCA, M.D.; PEDIATRIC ALLIANCE, P.C. D/B/A THE BREASTFEEDING CENTER OF PITTSBURGH, NANCY BRENT, M.D., MAGEE WOMEN'S HOSPITAL-UPMC; AND UPMC | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-A07033-16

APPEAL OF: PEDIATRIC ALLIANCE, P.C.
D/B/A THE BREASTFEEDING CENTER OF
PITTSBURGH AND NANCY BRENT, M.D.

No. 471 WDA 2015

Appeal from the Order of March 2, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 12-10765

MARIA HEDDLESTON AND BRIAN
HEDDLESTON, HER HUSBAND

    Appellant

    v.

OBSTETRICAL AND GYNECOLOGICAL
ASSOCIATES OF PITTSBURGH, INC.,
D/B/A OB/GYN ASSOCIATES OF
PITTSBURGH, RENATA D. HOCA, M.D.;
PEDIATRIC ALLIANCE, P.C. D/B/A THE
BREASTFEEDING CENTER OF
PITTSBURGH, NANCY BRENT, M.D.;
MAGEE WOMEN'S HOSPITAL-UPMC; AND
UPMC

APPEAL OF: OBSTETRICAL AND
GYNECOLOGICAL ASSOCIATES OF
PITTSBURGH INC. D/B/A OB/GYN
ASSOCIATES OF PITTSBURGH, RENATA
D. HOCA, M.D., MAGEE WOMANS
HOSPITAL-UPMC AND UPMC

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 490 WDA 2015

Appeal from the Order of March 2, 2015
In the Court of Common Pleas of Allegheny County

- 2 -

Civil Division at No(s): G.D. 12-10765

BEFORE: BOWES, MUNDY, and JENKINS, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 22, 2016**

Appellants Maria Heddleston ("Wife"), and her husband Brian Heddleston, ("Husband"), appeal from the judgment entered in favor of defendants in this medical malpractice case based upon a failure to timely diagnose Wife's breast cancer. Defendants include Obstetrical and Gynecological Associates of Pittsburgh, Inc. d/b/a OB/GYN Associates of Pittsburgh, Renata D. Hoca, M.D., Magee Womens Hospital-UPMC and UPMC and Nancy Brent, M.D. and Pediatric Alliance, P.C., d/b/a The Breastfeeding Center of Pittsburgh, and defendants have filed cross appeals. Appellants assert a number of errors that they maintain necessitate a new trial. We agree that relief is due on the basis of two of the grounds asserted, and hence, we vacate the judgment and remand for a new trial. We find no merit in Appellees' cross-claims.

In this medical malpractice case, Appellants averred that Appellees negligently failed to diagnose Wife's breast cancer in September or October 2009, leading her to progress to Stage IV breast cancer. In September 2009, Wife had a child at UPMC delivered by Dr. Hoca. While in the hospital, Wife received instructions in pumping during a breastfeeding consultation. Wife testified that, during September and October 2009, she complained about severe breast pain when she pumped. Her expert witnesses opined that these complaints should have alerted Appellees to order diagnostic

imaging, which would have indicated that Wife suffered from breast cancer. In November 2010, Wife was diagnosed with metastatic Stage IV breast cancer. Appellants' evidence was that the delay in diagnosis led to a increased risk that Wife will die from her cancer.

The jury returned a ten-to-two verdict in favor of Appellees. Appellants filed a timely motion for post-trial relief seeking a new trial; Appellees also filed motions for post-trial relief. On March 2, 2015, after hearing oral argument on the motions, the trial court entered three orders denying all post-trial motions. Appellants filed a motion for reconsideration on March 12, 2015, and, before the trial court ruled, they filed a timely notice of appeal. The trial court subsequently denied the motion and ordered Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants complied. Appellees filed timely cross-appeals and Rule 1925(b) statements. Appellants present seven issues for our review:

1. Are [Appellants] entitled to a new trial or, in the alternative, an evidentiary hearing where there was an undisclosed financial and professional relationship between a juror and the Chief Executive Officer of [Appellee] Pediatric Alliance, P.C. d/b/a The Breastfeeding Center of Pittsburgh, who was present during trial and introduced to the jury?

2. Are [Appellants] entitled to a new trial or, in the alternative, an evidentiary hearing where jurors have confirmed the existence of a second jury question that demonstrated juror confusion, which was never brought to the attention of counsel?

3. Are [Appellants entitled to a new trial where, over objection, the trial court allowed [Wife], a lay witness who is not a

- 4 -

doctor, to be cross-examined with medical slides taken from the Susan G. Komen charity's website?

4. Are [Appellants] entitled to a new trial where the trial court precluded [Appellants'] oncology expert, Barry Singer, M.D. from testifying as to whether a tumor would have been identified had diagnostic imaging been performed in September or October 2009, even though Dr. Singer was qualified to render such opinions, and both defense counsel and the trial court had agreed during motions *in limine* argument that Dr. Singer could provide such testimony?

5. Are [Appellants] entitled to a new trial where, over objection, the trial court allowed [Appellees'] causation expert, William Farrar, M.D., to give standard of care testimony regarding when a mammogram is appropriate?

6. Are [Appellants] entitled to a new trial where, over objection, the trial court allowed [Appellants'] standard of care expert, Robert Hecht, M.D., to be cross-examined regarding the irrelevant manner in which William Donaldson, M.D., a non-party treating physician of [Wife], addressed complaints of back pain?

7. Are [Appellants] entitled to a new trial where the trial court precluded [Husband] from testifying that a UPMC doctor advised [Appellants] to seek counsel to rebut [Appellee] UPMC's counsel's accusations that [Appellants] or their counsel fabricated the claims in this lawsuit?

Brief of Appellants at 6-8. Appellees have filed cross-appeals raising three questions:

A. Whether the trial court erred by denying Defendants' motion for a compulsory non-suit and/or motion for a directed verdict, where Plaintiffs' medical experts contradicted one another on an essential issue?

B. Whether the trial court erred by denying Defendants' motion for a compulsory non-suit and/or motion for a directed verdict, where Plaintiffs' expert failed to offer testimony to a reasonable degree of medical certainty that the alleged negligence caused the Plaintiffs' harm?

C. Whether the trial court erred by denying Defendant Magee and Defendant UPMC's motion for a compulsory non-suit and/pr motion for a directed verdict, where Plaintiffs failed to offer evidence that Defendant Dr. Hoca was the ostensible agent of these Defendants?

Brief of Deemed Appellees, Obstetrical and Gynecological Associates of Pittsburgh, Inc., d/b/a OB/GYN Associates of Pittsburgh, Renata D. Hoca, M.D., Magee-Women's Hospital-UPMC and UPMC at 7.

Appellees Pediatric Alliance, P.C. d/b/a The Breastfeeding Center of Pittsburgh, and Nancy Brent, M.D., raise the following issues in their cross-appeal:

1. Did the Trial Court err is [sic] denying Motions to Exclude , Motions for Non-Suit, and Motions for Directed Verdict when the Heddlestons' (Appellants) standard of care expert was not qualified to offer opinions critical of Dr. Brent and/or the employees of The Breastfeeding Center of Pittsburgh under 40 P.S. § 1303.512 and/or the Common Law of Pennsylvania?

2. Did the Trial Court err in denying Motions for Non-Suit and Directed Verdict when the Heddlestons' (Appellants) experts offered contradictory and inconsistent testimony on a material fact forcing the jury to speculate?

3. Did the Trial Court err in denying Motions for Non-Suit and Directed Verdict as the testimony of the Heddlestons' (Appellants) causation expert, Barry Singer, M.D., failed to establish causation or increased risk of harm against the Appellees?

Brief of Appellee Pediatric Alliance. P.C. d/b/a The Breastfeeding Center of Pittsburgh, and Nancy Brent at 49.

We will address the Heddlestons' appeal first, which requires us to determine whether the trial court erred or abused its discretion in denying their motion for new trial. In making that determination,

> Our standard of review from an order denying a motion for a new trial is whether the trial court committed an error of law, which controlled the outcome of the case, or committed an abuse of discretion. A trial court commits an abuse of discretion when it rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.

*Mirabel v. Morales*, 57 A.3d 144, 150 (Pa.Super. 2012) (internal citations and quotation marks omitted). We find that relief is due on Appellants' third and fourth issues, and thus, we address those issues first. Both of these issues involve errors in the admission or exclusion of evidence.

When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. *Gaudio v. Ford Motor Co.*, 976 A.2d 524, 535 (Pa.Super. 2009) (quoting *Stumpf v. Nye*, 950 A.2d 1032, 1036 (Pa.Super. 2008). Prejudice is suffered when the evidentiary error could have affected the verdict. *Id*.

Appellants challenge the trial court's overruling of their objection to the defense cross-examination of Wife with slides from the Susan G. Komen website purporting to depict the warning signs of breast cancer. They allege that this evidence was unauthenticated, it constituted hearsay, and that its use with a lay witness violated Pa.R.E. 701, 801, 802, and 901.

- 7 -

Appellants maintain that counsel for UPMC represented initially that his office prepared the slides. After using them to cross-examine Wife, UPMC's counsel orally represented to the jury that the information came from the Susan G. Komen website, and asked Wife to confirm that the website was indeed the source of the information. When Wife was unable to do, counsel sought Wife's agreement that the slides contained the warning signs and symptoms of breast cancer. Counsel for Appellee UPMC asked her:

> Q: And those are the warning signs and symptoms; correct?
>
> Mr. Archinaco: Objection. Same objection.
>
> The Court: I think that's a proper question. So ahead. What's the answer?
>
> A: I don't know. Could you say the question again?
>
> Q: Those are the warning signs and symptoms of breast cancer?
>
> A: Those are the warning signs.

Reproduced record ("R.R.") at 986a-987a.

Appellees counter that Wife confirmed the diagrams were representative of the signs and symptoms of breast cancer. While Appellants objected to the diagrams on authentication and hearsay grounds, UPMC contends that Appellants waived any objection based on improper factual testimony or lay opinion by failing to assert that basis for objection. Finally, Appellees argue that any error in this regard was harmless as it was uncontroverted that the diagrams accurately depicted the signs and symptoms of breast cancer. We disagree.

When counsel for Appellee UPMC initially called for the publishing of the diagrams, Appellants objected to the use of this evidence at sidebar. Counsel for Appellants stated that defense counsel intended

> to question [Wife] using a diagram that he [counsel] prepared about what he represents are the warning signs of breast cancer. He has to have someone authenticate -- a doctor authenticate what the warning signs are of breast cancer. He can't testify to what the warning signs are. He can ask her if she knows what the warning signs are, but she's not a doctor."

*Id*. at 981a. Thus, Appellants articulated their objection that Wife was not qualified to authenticate or otherwise offer medical testimony regarding the signs and symptoms of breast cancer. We reject Appellees' contention that this basis for objection was waived.

Defense counsel insisted, "I'm just going to illustrate to the jury these are the symptoms." *Id*. Appellants' counsel reiterated, "We have an objection to him putting up a diagram that he says are the symptoms of breast cancer and asking her whether to agree." *Id*. at 67. Nonetheless, the trial court permitted defense counsel to ask Wife "whether this is an accurate depiction." *Id*.

Defense counsel represented to Wife and the jury that his office prepared the slides and proceeded to cross-examine Wife about each of the signs and symptoms described. Wife denied experiencing any of the symptoms listed except the symptom described as a new pain in one area that did not cease. Wife explained that the pain did not cease when she pumped. Counsel for UPMC confirmed that the pain disappeared, however,

when Wife stopped pumping, and it dismissed the significance of the pain as a symptom.

At the end of this line of questioning, defense counsel noted Wife's involvement in Susan G. Komen activities and asked her, "If I told you that I got those from the Susan G. Komen website, you wouldn't disagree with me?" Again, Appellants objected, but the trial court merely asked counsel to rephrase. This prompted the line of questioning reproduced *supra* regarding Wife's ability to confirm that this information was on the Susan G. Komen website.

The trial court's characterization of the slides containing the signs and symptoms of breast cancer as demonstrative evidence begs the question. Even demonstrative evidence is subject to the rules of evidence regarding authentication, hearsay, and lay opinion. Certainly, if a qualified medical expert had opined that the signs and symptoms enumerated on the slides were generally accepted and fairly depicted on those slides, the evidence would have been admissible. Absent herein was the proper evidentiary foundation for the admission of the evidence depicted on the slides.

The evidence was improperly admitted and used. Most importantly, we are not persuaded that error in the admission of this evidence was harmless. This exchange accomplished two things: it suggested that the signs and symptoms of breast cancer identified on the slides were both medically accurate and an exhaustive list, a position contrary to that advanced by Appellants. Fundamental to Appellants' theory of liability was

that Wife's complaints of deep pain in the left breast while pumping necessitated additional testing to rule out a malignancy.

Secondly, the chart reinforced Appellees' contention that they were not negligent in failing to diagnose breast cancer as Wife did not have any warning signs or symptoms. The lynchpin of Appellants' case was that Appellees deviated from the standard of care when they failed to order and conduct imaging studies when Wife complained of significant pain, which was an eight on a scale of one to ten, deep in her left breast when she pumped. They further alleged that the failure to order the imaging, which would have revealed breast cancer, led to a delay in cancer diagnosis and increased risk of death. Appellees used unauthenticated, hearsay evidence, which it ultimately attributed to the Susan G. Komen website, to bolster its position that only persistent localized breast pain warranted additional testing, not pain that dissipated when a woman stopped pumping.

A second evidentiary error presents an even stronger basis for awarding a new trial in this case. Appellants contend that the trial court improperly precluded oncologist Barry Singer, M.D., from offering vital causation opinion testimony regarding what imaging would have shown in September or October of 2009, if it had been conducted. This issue first arose when Appellees filed a motion *in limine* to preclude Dr. Singer from offering standard of care testimony. Appellants' counsel represented at that time that, "We're not going to ask him to opine on standard of care, but we are going to ask him if a diagnostic test had been performed at that time,

what is your opinion that it should have shown, which is causation testimony, not standard of care testimony." R.R. at 793a-795a. Counsel for UPMC stated on the record: "I don't have a problem with that, Your Honor[,]" and the trial court agreed. *Id*. at 794a-795a.

At trial, on direct examination, Appellants' counsel asked Dr. Singer: "Doctor, had diagnostic imaging been ordered in September or October 2009, would it have revealed the tumor?" *Id*. at 1056a. As Dr. Singer proceeded to state his opinion, Appellees objected, contending that he was improperly providing standard of care testimony. *Id*. at 1057a. Appellants' counsel reminded the court that this was the identical question that Appellees agreed was not a problem during resolution of the motion *in limine* regarding Dr. Singer. Counsel for Appellants argued that Dr. Singer had to opine about what the imaging studies would have shown. Nonetheless, the trial court sustained the objection, finding this to be standard of care testimony. Appellees capitalized on the exclusion of this evidence in closing, arguing to the jury that Appellants failure to prove what imaging would have shown was "the gap in their case. Their case has failed. Because they've not come forward with evidence to connect anything." *Id*. at 1938a-1939a.

Appellees' position is, first, that Dr. Singer was not qualified under the MCARE Act to offer standard of care testimony. *See* 40 P.S. § 1303.512. They maintain that their objection was based on Dr. Singer's response to the question, which they characterize as venturing into standard of care testimony. They argue that they objected in anticipation of Dr. Singer

- 12 -

offering testimony "identifying the specific diagnostic tests which allegedly should have been done at the time of the subject care." Appellees' brief at 46-47. They contend that such testimony would have implicated the standard of care of a gynecologist. We disagree.

Appellants counsel asked:

Q: Doctor, had diagnostic imaging been ordered in September or October 2009, would it have revealed the tumor?

A: In my opinion as an oncologist, yes. Because even though she was Stage IV one year later, I do believe that the cancer was present back in 2009. It wasn't palpable, obviously, then because her breasts were engorged. And studies such as ultrasound or MRI would be able to - -

MS. BELL: Objection.

MR. KACHULIS: May we approach, Your Honor?

THE COURT: Yes.

(Sidebar discussion held as follows.)

MS. BELL: Judge, I object to this, because this is standard of care. This is backdooring standard of care testimony. If you did these tests, what would they have shown? Suggesting these tests should have been done by him answering that question, which is standard of care testimony.

This is different than just saying,"What stage do you believe her cancer was?" They're bootstrapping the standard of care of opinion in the question.

MR. KACHULIS: Because this relates to the specifics of our motion in limine, which I'm quoting Dr. Singer's report. He says, "If appropriate work-up had been undertaken, then it would have been detected earlier at an earlier stage."

The answer that he just gave responds to the question, falls right within the ambit of that. And, therefore, it's standard of care.

MS. BELL: We join in the objection.

MR. BRACKEN: It is not standard of care testimony. What he has testified to was whether or not the imaging would have shown the tumor. That is causation testimony. He has not said whether or not they should have ordered the test. He did not say that. I even represented to them -- when we were talking about this motion in limine, I told them the specific question that I was going to ask. Because he has to be able to say what the imaging would have shown. That's a causation issue.

MS. BELL: No. He's also not –

MR. BRACKEN: And it's in his report.

MS. BELL: He's also not qualified to say what an imaging would show. He's not a radiologist. He's not a mammographer.

THE COURT: It seems to me we're talking standard of care here, so it's out. Sustained.

MR. ARCHINACO: Just note an exception.

(Sidebar discussion concluded.)

R.R. at 1058a.

In order to establish a prima facie case of medical malpractice, "the plaintiff must prove that 1) the medical practitioner owed a duty to the plaintiff; 2) the practitioner breached that duty; 3) the breach was the proximate cause of, or a substantial factor in, bringing about the harm the plaintiff suffered; and 4) the damages suffered were the direct result of the harm. *Carrozza v. Greenbaum*, 866 A.2d 369, 379 (Pa.Super. 2004), citing *Montgomery v. South Philadelphia Medical Group*, 656 A.2d

1385, 1390 (Pa.Super. 1995). Expert testimony is usually required to establish that the defendant's conduct deviated from "good and acceptable medical standards, and that such deviation was a substantial factor in causing the harm suffered." *Id*. (citations omitted).

Appellants offered the testimony of Dr. Hecht, a gynecologist, to establish the standard of care for medical practitioners such as Appellants based on the facts known to them. He opined that Appellees deviated from that standard when they failed to order imaging studies to rule out cancer. Nonetheless, unless an expert provides the causal link between the breach and the injury, a plaintiff cannot recover.

Dr. Singer was charged with providing the causal link between the defendants' negligent failure to do diagnostic testing and the increased risk of harm to Wife. Assuming that it was a breach of the standard of care not to order the testing in September or October 2009, Appellants would still have to prove that testing would have shown the tumor, *i.e.*, that the failure to timely diagnose Wife's breast cancer increased the risk of harm to Wife.

Dr. Singer was attempting to offer testimony that Wife's cancer was present in 2009, that it was not palpable, and that it was detectable with imaging studies such as ultrasound or MRI. He did not opine that it was the standard of care to order such tests, nor did he even suggest that it was a deviation from the standard of care not to do so. He was merely offering expert causation testimony to the effect that the cancer was present in 2009, that it would have been visible on imaging or MRI, and that it would

- 15 -

not have been Stage IV. Without such testimony, Appellants were prevented for presenting a case for medical malpractice. The trial court erred in sustaining the defense objections to Dr. Singer's vital expert causation testimony on the basis alleged. The defense exploited the error in closing argument. We find the error was so prejudicial to Appellants as to require a new trial.

Having identified two bases upon which a new trial is mandated, we need not address Appellants' issues regarding the trial court's refusal to hold an evidentiary hearing to explore whether there was an impermissible relationship between a juror and the director of Breastfeeding Center or the propriety of utilizing jury affidavits to investigate whether there was jury confusion, as these issues will not recur in a subsequent new trial. In the event that William B. Ferrar, M.D. is called by the defense to provide expert causation testimony, he should be directed not to inject his opinion as to when women should obtain their first screening mammogram, or suggest that a mammogram was not warranted in Wife's case because she was only in her thirties. Similarly, although we find the defense's cross-examination of Robert Hecht, M.D., regarding William Donaldson, M.D.'s treatment of Wife's back to be irrelevant, it was not so prejudicial as to require a new trial. Again, such irrelevant testimony should be precluded upon retrial.

Finally, to rebut the inference that Appellants constructed their theory of liability only after consulting with an attorney, Appellants sought to introduce through Husband that a UPMC physician advised them to retain a

lawyer. They asked the trial court for a ruling prior to eliciting such testimony. The trial court immediately focused on the fact that Husband would testify that it was a UPMC physician, that UPMC was a defendant in the case, and refused to permit this line of inquiry. The court advised counsel for Appellants that "You can ask whatever you want, but we're not going to go into who recommended them, that somebody from UPMC." The court clarified further: "You can ask him 'Did somebody tell you to get an attorney?'" R.R. at 1237a-1242a. Counsel was not permitted to ask who made the recommendation. Appellants abandoned this strategy.

On appeal, Appellants contend that this line of inquiry was fair comment and did not constitute hearsay, as it was not introduced for the truth of the matter asserted. We fail to see the relevance of that evidence if it is not true. We agree with the trial court that it would have been prejudicial to mention UPMC or identify the physician who made the recommendation. The trial court made it quite clear that, had an objection been made to defense counsel's suggestion in opening statement that Appellants' counsel fabricated the case, it would have been sustained. We find no error or abuse of discretion in this regard. Furthermore, Appellants have not established prejudice.

In the cross-appeals, three overlapping positions are presented. Appellees first contention is that Dr. Hecht was not qualified to offer an opinion related to breastfeeding, that he should not have been permitted to

offer the opinion that imaging should have been ordered in 2009, and that they were entitled to a directed verdict. It is settled that

> "[w]hether a witness has been properly qualified to give expert witness testimony is vested in the discretion of the trial court. It is well settled in Pennsylvania that the standard for qualification of an expert witness is a liberal one." **Wexler v. Hecht**, 847 A.2d 95, 98 (Pa.Super. 2004) (citations and quotation marks omitted). "Thus, we may reverse the trial court's decision regarding admission of expert testimony only if we find an abuse of discretion or error of law. Furthermore, because the issue regarding an expert's qualifications under the MCARE Act involves statutory interpretation, our review is plenary." **Jacobs v. Chatwani**, 922 A.2d 950, 956 (Pa.Super. 2007) (citations omitted).

**Vicari v. Spiegel**, 936 A.2d 503, 512–13 (Pa.Super. 2007).

We concur with the trial court that Dr. Hecht was sufficiently qualified to render an opinion that Wife's expression of severe pain while breast pumping should have led Appellees to order diagnostic imaging of the breast in question. Dr. Hecht was an obstetrician and gynecologist, and opined that Wife complained about sufficient pain while pumping to suggest that there was a serious problem warranting diagnostic imaging. A gynecologist is qualified to offer an opinion as to whether a patient has presented with symptoms of breast cancer so as to require imaging tests. Hence, we reject this averment.

Appellees also argue that they were entitled to a directed verdict based upon disagreements and contradictions between Appellants' expert witnesses, Doctors Singer and Hecht. **See Mudano v. Philadelphia Rapid Transit Co.,** 137 A. 104 (Pa. 1927). Whether there are sufficient conflicts

- 18 -

between the expert witnesses to warrant a direct verdict under **Mudano** is a question of law "subject to de novo review, and our scope of review is plenary." **Halper v. Jewish Family & Children's Serv**., 963 A.2d 1282, 1285 (Pa. 2009). A directed verdict against a plaintiff is appropriate under **Mudano** "when the testimony of his two expert witnesses is so contradictory that the jury is left with no guidance on the issue." **Brannan v. Lankenau Hosp.**, 417 A.2d 196, 200 (Pa. 1980). Indeed, the plaintiff's experts must "so vitally disagree on essential points as to neutralize each other's opinion evidence." **Id.** (citation omitted). A jury is permitted to resolve conflicting testimony. **Id**. Conflicts "are fatal only if absolute." **Id**.

We have examined the testimony of Dr. Hecht and Dr. Singer. We concur with the characterization of the trial court that there was no "absolute contraction or vital disagreement" between Appellants' expert witnesses such as to warrant application of the **Mudano** rule. Trial Court Opinion, 5/19/15, at 9.

In their cross appeals, Appellees also suggest that Dr. Singer's testimony regarding causation was so woefully inadequate as to require a directed verdict.

> Our standard[s] of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

- 19 -

There are two bases upon which a judgment N.O.V. can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Campisi v. Acme Markets, Inc.,* 915 A.2d 117, 119 (Pa.Super. 2006) (citation omitted).

Dr. Singer's testimony on causation would have been clear and precise if permitted to testify fully. He, as we noted above, should have been able to state that a diagnostic imaging test in fall of 2009 would have revealed the existence of breast cancer. Dr. Singer reported that when the cancer diagnosis was made in November 2010, Wife suffered from Stage IV, metastatic cancer that had spread throughout Wife's body. Dr. Singer observed that Stage IV cancer carries a seriously increased risk of death. He stated that the failure to diagnose the cancer in fall of 2009 increased the risk of harm to Wife. Hence, his testimony, even abridged, was sufficient for Appellants to survive a motion for a directed verdict.

The final issue in the cross-appeals is that the trial court erred in failing to dismiss defendants Magee Women's Hospital of UPMC and UPMC due to an alleged lack of evidence supporting the existence of an agency relationship between Dr. Hoca and those entities. We reject this position based upon the trial court's analysis contained at pages eleven and twelve of

its May 19, 2015 opinion, wherein the court noted that Dr. Hoca reported that she worked for UPMC since becoming a physician.

Judgment reversed. Case remanded for a new trial. Jurisdiction relinquished.

Judge Mundy joins the memorandum.

Judge Jenkins files a concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/22/2016